THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESLIE FEAGANS, Defendant-Appellant.

Fourth District   No. 4—84—0687

Opinion filed June 25, 1985.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and Linda Welge, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Following a jury trial in the circuit court of Sangamon County, defendant was convicted of the offenses of murder and armed robbery in violation of sections 9—1 and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1, 18—2). Defendant was sentenced to concurrent prison terms of 30 years for murder and 10 years for armed robbery.

This case is on appeal for the second time. Defendant's original convictions for murder and armed robbery were reversed by this court on the ground that the State, at the pretrial hearing to suppress a certain statement made by defendant to police, failed to produce or explain the absence of a police officer who was a material witness to defendant's statement. This court also found reversible error in the refusal of defendant's tendered instruction on the defense of involuntary intoxication and remanded the case for a new trial. *People v. Feagans* (1983), 118 Ill. App. 3d 991, 455 N.E.2d 871.

Upon remand, the trial court held a *de novo* hearing on the admissibility of defendant's statement, at which the officer in question was called to testify. The court again found that the statement was voluntarily given, and it was introduced by the State at defendant's second trial.

In this appeal, defendant alleges that: (1) the doctrine of collateral estoppel precluded the trial court from reconsidering the voluntariness of defendant's statement; (2) the statement was in any event given involuntarily and should have been suppressed; and (3) the evidence was insufficient to prove defendant guilty of murder beyond a reasonable doubt. For the reasons stated below, we disagree with each of these contentions and therefore affirm defendant's convictions.

On April 27, 1982, police received an anonymous tip that defendant may have been involved in a murder. During the resulting investigation, police obtained two statements from defendant implicating himself and two other individuals in the murder of Charles Cummings. Following these statements, Cummings' body was discovered in the Sangamon River, downstream of the Illinois Route 29 bridge. An autopsy revealed that the cause of death was consistent with drowning.

The State's case was based primarily on the two incriminating

statements made by defendant to investigating officers on April 28 and 29, 1982. Only the former statement is directly at issue on appeal. Both statements are essentially the same in content, containing only minor discrepancies and additions.

On April 28, 1982, defendant gave a statement to Detective Thomas Kramp of the Springfield police department which was reduced to written form and read to the jury at defendant's second trial. Defendant stated that he had spent the evening of March 18, 1982, drinking at several Springfield area taverns with his brother, Robert Feagans, and David Landers. At one of the taverns they met a man named Chuck, whom defendant later identified as the victim, Charles Cummings. Cummings accompanied the trio on their round of taverns, after which the four men drove around in Landers' car.

Defendant stated that while they were driving, he demanded from Cummings money defendant had spent buying drinks for him. Cummings replied that he had no money. Defendant then told Cummings that if the latter did not come up with some money something would happen to him. Defendant thereupon brandished a wooden club which Landers had given him and threatened Cummings with rape or something similar. Landers then indicated that they should kill Cummings instead, to which defendant objected.

Defendant then ordered Cummings to remove his shirt, shoes, and glasses. The shoes and glasses were thrown out of the car, and defendant tore the shirt into strips, which he then handed to his brother, who used them to tie Cummings' arms.

Defendant stated that at this point things became hazy because of his intoxication. He claimed it was his idea to leave Cummings in the country and make him walk back to town naked. However, defendant lost consciousness, and when he awoke Cummings was no longer in the car. Defendant asked his companions what had happened to Cummings but received no reply. He returned home, where he told his wife that he thought someone had been killed. Defendant was later informed by his brother and Landers that they had taken $2.35 from Cummings, after which they had pushed Cummings over a bridge with his arms and legs tied. They told defendant, however, that he had not assisted them in the act.

Defendant's second statement was given to Detective Al Sample of the Sangamon County sheriff's department on April 29, 1982. This statement was recorded and a transcript thereof read to the jury at defendant's second trial. As stated, this second statement paralleled the first in all essentials. Defendant additionally recalled that Landers expressed the desire to kill Cummings in order to avoid possible kid-

naping charges; defendant again claimed that he voiced objections to such proposal. Defendant also vaguely recalled seeing Cummings' legs tied before he became unconscious.

In his second trial, defendant's testimony largely corroborated the version of events he gave in his pretrial statements. He stated that he drank over a case of beer on March 18, 1982, before blacking out in Landers' car. At trial, defendant testified, contrary to his statements, that he ordered Cummings to remove his clothing before Landers mentioned killing Cummings. Defendant also denied tearing up Cummings' shirt into strips, testifying that he merely ripped it up the back and passed it to his brother. Defendant did recall testifying at his first trial that he had used a pocketknife to cut Cummings' shirt. Defendant also denied ever seeing Cummings tied up. Defendant testified that he told the police he had assisted in tying up Cummings because he was confused when he made his statements.

Defendant testified that following March 18, 1982, he was unsure whether Cummings had actually been killed or whether his brother and Landers were lying to him about pushing Cummings off of the bridge. Sometime later he returned to some of the bars they had been to on March 18, 1982, in an unsuccessful effort to determine whether any of the bartenders had seen Cummings since that night. This testimony was corroborated by one bartender, who related that defendant told him that he thought the man they were with that night had been killed.

■■ We first address defendant's argument that the trial court improperly conducted a *de novo* hearing on the voluntariness of defendant's April 28, 1982, statement to Springfield Detective Kramp. As noted, this court held that the statement should have been suppressed because the State failed to produce or explain the absence of a material witness to the statement. (*People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712.) On remand, over defendant's objection, the court heard the testimony of the material witness and, based upon that testimony and the evidence adduced at the original hearing on defendant's motion to suppress, concluded that the statement was voluntary and therefore admissible.

Defendant argues that since this court ruled the statement inadmissible, the doctrine of collateral estoppel barred the relitigation of the issue on remand. However, we find that the doctrine of collateral estoppel is inapplicable to the case at bar as that doctrine applies only to the relitigation of an issue at the trial level prior to appeal. (*People v. Webb* (1982), 109 Ill. App. 3d 328, 440 N.E.2d 406.) Thus, most of the cases cited by defendant to support his argument are inapposite

to the procedural situation at bar. *E.g., People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14; *People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.

At his second trial, defendant argued that the doctrine of law of the case barred relitigation of the voluntariness issue and that this court's prior opinion required that the statement to Detective Kramp be suppressed. On this appeal, defendant has also cited cases concerning that doctrine, and we will therefore consider its application to the instant case.

In general, the doctrine of law of the case holds that when a judgment of a trial court is reversed and remanded, the trial court is bound by the appellate court's resolution of the issues decided on appeal and must proceed in a manner consistent with the reviewing court's directions. (*People v. Webb* (1982), 109 Ill. App. 3d 328, 440 N.E.2d 406.) As was stated in *Roggenbuck v. Breuhaus* (1928), 330 Ill. 294, 297-98, 161 N.E.2d 780, 781:

> "After a judgment is reversed and the cause is remanded the inferior tribunal can take only such further proceedings as conform to the judgment of the appellate tribunal. If specific directions are given nothing can be done except carry out those directions. If no specific directions are given it must be determined from the nature of the case what further proceedings will be proper and not inconsistent with the opinion. It is not required that specific directions shall be stated in an order reversing a judgment and remanding a cause, and it is the duty of the court to which the cause is remanded to examine the opinion and proceed in conformity with the views expressed in it."

■ If on appeal an issue is not decided on its merits and the judgment is reversed and remanded with directions to proceed in conformity with the views expressed therein, upon retrial evidence offered by either party which falls within the principles announced must be received although it is new evidence. (*Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1977), 46 Ill. App. 3d 412, 361 N.E.2d 23.) In a criminal case, where one party is successful in contesting a pretrial order on appeal, reversal and remandment does not preclude the trial court from considering other issues originally raised in the pretrial proceedings but not finally determined by the appellate court on the merits. *People v. Smith* (1979), 72 Ill. App. 3d 956, 390 N.E.2d 1356.

In the instant case, this court decided in defendant's original appeal only that defendant's statement should have been suppressed,

given the failure of the State to produce or explain the absence of a material witness to the statement. We therefore did not reach the issue of the voluntariness of defendant's statement. This court's mandate directed the trial court to conduct such other proceedings as were required by the opinion.

Where the evidentiary record is insufficient to determine the propriety of the trial court's denial of a motion to suppress a defendant's confession (as it was here by virtue of the failure of the absent officer to testify), the appellate court can reverse and remand for a new trial or remand the case for a new and complete hearing on the admissibility of the confession with directions that, if the confession is found inadmissible, a new trial must be granted. (*People v. White* (1973), 10 Ill. App. 3d 914, 295 N.E.2d 300.) This second option was unavailable on defendant's first appeal, however, given that error also occurred in the failure of the court to instruct the jury on the defense of voluntary intoxication. Thus, the case was generally reversed and remanded, the effect of which was to abrogate the pretrial order and judgment of conviction and to leave the proceeding as it stood prior to the entry of the order and judgment which were in effect expunged from the record. *People v. Rea* (1979), 80 Ill. App. 3d 77, 399 N.E.2d 302.

■ Thus, on remand, the order denying defendant's motion to suppress his statement had no legal effect. An examination of this court's prior opinion revealed that the issue of voluntariness remained to be decided in light of the rule announced in *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712. The State, in order to meet the burden of proving voluntariness, was required to either produce the material witness or explain his absence, and the trial court was required to hear new evidence on the issue. Therefore, no error occurred in rehearing defendant's motion to suppress his statement. *People v. Smith* (1979), 72 Ill. App. 3d 956, 390 N.E.2d 1356.

■ We address next defendant's renewed contention that his April 28, 1982, statement to Detective Kramp was involuntary and the trial court therefore erred in allowing it to be admitted at trial. Defendant bases his argument on his testimony that he was highly intoxicated when he made the statement, having consumed over a case of beer prior thereto. Two other witnesses corroborated that defendant had been drinking all day on April 27 and was drunk by the time he agreed to talk to police in the early morning hours of April 28.

On the other hand, police officers present when the statement was made testified that they noticed no signs of intoxication, such as odor, slurred speech, or staggering. Defendant was observed driving

an automobile just prior to his initial contact with police. The initial interview occurred inside defendant's residence, in the presence of his wife and father, after which defendant agreed to accompany the officers to the police station to make a written statement. At the station, defendant signed a written waiver of his *Miranda* rights and indicated he understood those rights. After his statement was reduced to written form, defendant read the statement, signed each page, and initialed the places where an officer had made corrections. Defendant was able to remember details of the questioning, including the fact that the officers did not promise him anything or threaten him to induce the statement.

In a hearing on a defendant's motion to suppress a statement, the State bears the burden of proving by the preponderance of the evidence that the statement was knowingly, intelligently, and voluntarily made. (Ill. Rev. Stat. 1983, ch. 38, par. 114—11; *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181.) The trial judge, as trier of fact, is in the best position to determine whether a statement was made voluntarily, and on review our inquiry is limited to whether such determination is against the manifest weight of the evidence. *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181.

Where the evidence plainly shows that a suspect is so grossly intoxicated that he no longer has the capacity to knowingly waive his rights, suppression of any resulting statement is warranted. (*People v. Moon* (1976), 38 Ill. App. 3d 854, 350 N.E.2d 179.) However, where evidence of such gross intoxication is less than clear, as in the instant case, the fact that the suspect has been drinking does not render his statement inadmissible but goes only to the weight to be accorded it. (*People v. Moon* (1976), 38 Ill. App. 3d 854, 350 N.E.2d 179; *People v. Phillips* (1982), 110 Ill. App. 3d 1092, 443 N.E.2d 655.) The trial judge was entitled to believe the officers' conclusions regarding defendant's sobriety. *People v. Rathgeb* (1983), 113 Ill. App. 3d 943, 447 N.E.2d 1351.

■ Defendant also asserts that the trial judge applied the wrong standard in denying the motion to suppress when he stated that the motion was denied because "the statement in question is not involuntary to the extent that it should be excluded." We consider this statement to be ambiguous; it can be understood as indicating that while the testimony was conflicting, the State proved voluntariness by a preponderance of the evidence. The judge's statement was not improper, given the rule that evidence of less than gross intoxication goes to the weight to be accorded the defendant's statement and not to its admissibility. We cannot say that this determination was against

the manifest weight of the evidence, and consequently the statement was properly admitted.

■■ Having determined that defendant's statement was properly admitted against him at his second trial, we turn to defendant's remaining argument that he was not proved guilty of murder beyond a reasonable doubt. We note that defendant does not contest the sufficiency of the evidence supporting his conviction for armed robbery.

Defendant was tried for murder under two separate theories: accountability (Ill. Rev. Stat. 1983, ch. 38, par. 5—2) and what is commonly known as felony murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3)). We find it necessary to consider only the former of these theories, as the evidence at defendant's second trial established that he was accountable for the murder of Charles Cummings.

Under section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c)), a person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." It is true that a defendant's mere presence at the scene of a crime does not make him accountable for the acts of his companions; he must have known that a crime was being committed (*People v. Ross* (1981), 100 Ill. App. 3d 607, 426 N.E.2d 1271). However, when one attaches himself to a group bent on illegal acts which are dangerous or homicidal in nature or which will probably or necessarily require the use of force and violence that could result in an unlawful homicide, he is accountable for the acts committed by the other members of the group in furtherance of the common purpose, or as a natural and probable consequence thereof, even though he did not actively participate in the overt act. *People v. Campbell* (1979), 77 Ill. App. 3d 804, 396 N.E.2d 607.

In order to prove criminal accountability beyond a reasonable doubt, the State must show that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the crime; (2) defendant's participation took place either before or during the commission of the offense; and (3) the participation occurred with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Campbell* (1979), 77 Ill. App. 3d 804, 396 N.E.2d 607.) In the instant case, according to defendant's own pretrial statements, he was aware of Landers' desire, twice communicated to defendant, to kill Cummings. Landers indicated that the murder was necessary to avoid possible prosecution for kidnaping. Further, at the time of the murder an armed robbery had taken place,

a robbery which was instigated by defendant, according to his own admission. Defendant was also undisputedly aware that Landers possessed the means to carry out his threats, to wit, the leaded club which defendant had brandished.

We find that defendant facilitated the commission of the murder by tearing up Cummings' shirt and passing the strips to Robert Feagans with directions to bind the victim. Defendant testified at trial that this act was accomplished prior to Landers' threats, but this testimony was impeached by his prior inconsistent statements. In one of those statements, defendant indicated that he observed Cummings' legs tied up, a circumstance inconsistent with defendant's purported intention to drop the victim off in the country and force him to walk back to town naked. In light of this evidence, it is clear that defendant's supposed objections to Landers' threats were not accompanied by any action amounting to a withdrawal from the murder; compare *People v. Cole* (1977), 50 Ill. App. 3d 133, 365 N.E.2d 133, *cert. denied* (1978), 435 U.S. 944, 55 L. Ed. 2d 541, 98 S. Ct. 1526.

■ Defendant claims that his testimony concerning his high level of intoxication and his state of unconsciousness at the time of the murder negate the requisite intent to find him accountable for Cummings' death. However, criminal accountability may be imposed in appropriate circumstances even where the defendant is not present at the scene of the crime. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) Obviously then, even assuming that this aspect of defendant's testimony was believed by the jury, his unconsciousness was insufficient to absolve him from criminal liability, given his prior acts which facilitated the murder. Further, the extent of defendant's intoxication was controverted by a State's witness who observed defendant shortly before the murder, and the jury was free to reject defendant's testimony in this regard. (*People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024.) The State was required to prove merely that defendant's acts were committed with the knowledge that they created a strong probability of death or great bodily harm to the victim. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2).) We conclude that the jury could properly infer the requisite intent from the circumstances surrounding Cummings' death.

In conclusion, we observe that the level of defendant's participation in Cummings' murder was essentially a matter of defendant's credibility and thus a determination for the trier of fact. Defendant's credibility at his second trial was repeatedly damaged by his inconsistent pretrial statements, and the jury was not required to believe defendant's account of the events of March 18 and 19, 1982. (See *Peo-*

*ple v. Jones* (1985), 105 Ill. 2d 342, 475 N.E.2d 832.) We cannot say that the evidence in the record before us is so insubstantial as to raise a reasonable doubt of defendant's accountability for the murder of Charles Cummings.

For the foregoing reasons, we affirm defendant's convictions for murder and armed robbery.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.