THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CARR, Defendant-Appellant.

First District (3rd Division)  No. 85—2053

Opinion filed November 18, 1987.—Modified on denial of rehearing May 18, 1988.

Michael Wilkie, of Chicago, and William Carr, *pro se*, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, Michael D. Jacobs, Inge Fryklund, and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

This case is before us for a second time. At trial on remand defendant William Carr was found guilty of murder and conspiracy, and the trial court sentenced him to a term of 38 years' imprisonment. Defendant appeals.

Police found the body of Richard Bernoski on October 26, 1978. On the evening of November 12, 1978, police apprehended defendant and Carol Lumpp in a motel room in Chicago and took them to separate interview rooms in the local police station. Defendant and Lumpp both made written statements on November 13, 1978. Defendant and Lumpp moved to suppress the statements prior to their first trials and the trial court denied the motions. On appeal we reversed and remanded because we found that the State had failed to produce all material witnesses connected with the taking of defendant's and Lumpp's statements at hearing on the motions to suppress. (*People v. Lumpp* (1983), 113 Ill. App. 3d 694, 701, 447 N.E.2d 963.) On remand, Lumpp pleaded guilty to conspiracy, and the State's Attorney decided not to prosecute her for murder. The court sentenced her to an extended term of 10 years for conspiracy.

I

At defendant's new trial, the court heard the motion to suppress *de novo*, and it denied the motion. Defendant contends that the trial court violated our mandate when it reopened hearing on his motion to suppress. In our earlier opinion we stated:

> "[W]e hold that the prosecution failed to meet its burden of producing all material witnesses connected with the taking of each defendant's statement or explaining their absence. Accordingly, their statements should have been suppressed. For that reason, their convictions must be reversed, and the causes must be remanded for new trials." *Lumpp*, 113 Ill. App. 3d at 701.

■■ ■ As our supreme court stated, "After a judgment is reversed and the cause is remanded[,] the inferior tribunal can take only such further proceedings as conform to the judgment of the appellate tribunal." (*Roggenbuck v. Breuhaus* (1928), 330 Ill. 294, 297, 161 N.E. 780.) When the appellate court decides any issue on its merits the trial court is bound by the appellate court's resolution of the issue. (*People v. Webb* (1982), 109 Ill. App. 3d 328, 330, 440 N.E.2d 406.) However, the trial court is not precluded from considering issues which the appellate court did not determine on their merits. *People v. Feagans* (1985), 134 Ill. App. 3d 252, 257, 480 N.E.2d 153 (*Feagans II*).

In *People v. Feagans* (1983), 118 Ill. App. 3d 991, 455 N.E.2d 871 (*Feagans I*), the defendant confessed to a crime and at trial he moved to suppress the confession. One of the police officers who was present when defendant confessed did not testify at the hearing on the motion to suppress. The appellate court found that the officer "was a material witness to defendant's statement. The State should either have had him testify or explained his absence. *** Defendant's statement *** should have been suppressed." (*Feagans*, 118 Ill. App. 3d at 995-96.) The court reversed and remanded the cause for a new trial. (118 Ill. App. 3d at 997.) "Upon remand, the trial court held a *de novo* hearing on the admissibility of defendant's statement, at which the officer in question was called to testify." (*Feagans*, 134 Ill. App. 3d at 254.) The appellate court found that in *Feagans* I it "did not reach the issue of the voluntariness of defendant's statement." (134 Ill. App. 3d at 258.) Since it had reversed the trial court's decision to deny the motion to suppress without reaching the merits of the issue, "no error occurred in rehearing defendant's motion to suppress his statement." 134 Ill. App. 3d at 258.

■ Similarly, in the initial appeal in the case at bar we reversed and remanded for a new trial because the State failed to present a material witness at the hearing on defendant's motion to suppress. Following *Feagans* II, we hold that the trial court correctly reopened the hearing on defendant's motion to suppress statements.

## II

At the hearing on the motion to suppress, Detective Hans Heitmann testified that he went to a motel room on November 12, 1978. Defendant answered the door and Heitmann identified himself as a police officer and told defendant that he was investigating a homicide. Heitmann asked to see some identification of defendant and defendant took from his wallet an ID in the name of Michael Dean. Heit-

mann asked to look at other identification in defendant's wallet, and he found a driver's license in the name of William Carr. Defendant said his name was Dean, not Carr. Heitmann read defendant his *Miranda* rights and took him to the police station. He went to the interview room to talk to defendant from time to time until midnight. No one struck defendant in Heitmann's presence, defendant was not handcuffed, and defendant never requested a lawyer.

Investigator Kenneth Spink testified that he and Detective William Savage interviewed defendant at 1:30 a.m. on November 13, 1978. He advised defendant of his *Miranda* rights, but defendant did not request a lawyer. No one in his presence either struck defendant or threatened to harm him. Defendant was not handcuffed while he was in the interview room. When Spink asked defendant his name, defendant did not answer. Spink told defendant that one of the officers knew William Carr. He opened the door to the interview room and Detective Dave Paul was standing in the doorway. Spink asked Paul if defendant was William Carr and Paul answered "Yes." Spink testified that Paul left and defendant continued to deny that he was William Carr. Savage substantially corroborated Spink's testimony.

Investigator Lawrence Flood testified that he and his partner, Joseph McCabe, interviewed defendant several times between 9:30 a.m. and 3 p.m. on November 13, 1978. Flood read defendant his *Miranda* warnings before the first conversation. No one threatened or struck defendant in his presence, and defendant was given something to eat. Defendant did not ask for a lawyer; instead he asked for immunity. Flood testified that defendant made his formal statement in the presence of Flood, McCabe, Assistant State's Attorney Julia Nowicki, and a court reporter at 8:15 p.m. that day. McCabe corroborated Flood's testimony.

Nowicki testified that she read defendant his rights at the beginning of each of her conversations with him. She, too, testified that no one threatened or struck defendant, he had coffee to drink, and he sought immunity, but he never requested a lawyer. She told him that the State would not grant him immunity.

Detective Paul testified that prior to October 1978 he befriended a woman named Michele Sanchez, who had previously worked as a prostitute. She told Paul that defendant had demanded that she work as a prostitute for him, and she asked Paul to talk to him. Paul went to defendant's apartment and told defendant to leave Michele alone. After the shooting, Paul discovered that a police officer had seen defendant within a few blocks of the shooting shortly after the crime was committed. Paul went back to defendant's apartment but defend-

ant was not there. Paul spoke to Sharon Clark, who lived with defendant. Paul testified that he did not threaten Clark, and he did not threaten defendant when he identified him at the police station.

Defendant testified that when Spink interviewed him at 1:30 a.m., Spink told defendant that he knew defendant had had a run-in with Paul, and he would let Paul beat up defendant if he did not cooperate. Defendant asked repeatedly to be allowed to call his attorney, but the police officers denied the requests. Heitmann handcuffed him on the evening of November 12, and he remained handcuffed until he agreed to talk to the police about the incident. He was not allowed to go to the bathroom before 9 a.m. on November 13. Defendant testified that Flood threatened to release defendant from police custody, and let "a man in Elmhurst blow [defendant's] brains out." Defendant understood this as a threat that the Mafia would kill him because of the victim's alleged involvement in the Mafia. No one told him his *Miranda* rights before Nowicki read them to him on the afternoon of November 13. He had no food or coffee before she arrived.

Defendant testified that he spoke to attorney Stephen Broussard prior to his arrest. Broussard did not testify on the motion to suppress, but at trial he testified that he told defendant to call him if anything happened. Broussard's wife received a call concerning defendant on November 13, 1978, shortly before midnight, about three hours after defendant made his statements. Broussard filed an appearance on behalf of defendant the following morning.

The trial court found that defendant made his statement voluntarily, and therefore it denied his motion to suppress. On appeal defendant contends that the finding was contrary to the manifest weight of the evidence.

A statement is admissible at trial if "it has been made freely, voluntarily and without compulsion or inducement of any sort" (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731); it is inadmissible if police overcame defendant's will in order to obtain the confession (*Prim*, 53 Ill. 2d at 70). The trial court does not need to be convinced beyond a reasonable doubt that a confession was made voluntarily for the confession to be admissible into evidence, and the trial court's finding regarding voluntariness will not be disturbed unless it is contrary to the manifest weight of the evidence. *People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 1009, 457 N.E.2d 1300.

Even if defendant's testimony could support a finding that his will was overcome, the State's witnesses contradicted all of the essential facts to which defendant testified. He testified that police threat-

ened him repeatedly, and specifically that Spink threatened to let Paul attack him; all of the State's witnesses testified that they made no threats and they heard no threats, and Spink specifically testified that he did not threaten to let Paul attack defendant. He asked Paul to identify defendant because defendant denied that he was William Carr, and he knew that Paul had met Carr. Paul testified that he did not threaten defendant. Defendant claimed that he was not fed, but two of the State's witnesses testified that they saw him drinking coffee, and McCabe testified that defendant received food, possibly a bologna sandwich. Defendant stated that none of the police officers informed him of his *Miranda* rights, but Heitmann, Spink and Flood swore that they read him his rights. He testified that he requested an attorney and the State's witnesses testified that he did not.

"It is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. Where the evidence is in conflict a court of review may not substitute its judgment for that of the trier of fact." (*Rhodes*, 119 Ill. App. 3d at 1009-10.) The trial court found the State's witnesses more believable where their testimony conflicted with defendant's testimony. We cannot say that the trial court's finding is contrary to the manifest weight of the evidence.

### III

The evidence at trial consisted primarily of an eyewitness account of the shooting and defendant's written statement. Wayne Meskill, the eyewitness, testified at defendant's original trial. Six months before the trial on remand, an investigator working for the State's Attorney discovered that Meskill lived in Largo, Florida. The prosecutor contacted Meskill and arranged to fly him back to Chicago for the trial. He obtained Meskill's home and work addresses and telephone numbers. Some days prior to the scheduled start of the trial on remand the prosecutor attempted to contact Meskill again to complete travel arrangements. Meskill no longer lived at the address the prosecutor had obtained, and he no longer worked at his former place of employment. His former employers had no idea of his whereabouts. The telephone company had no listing for Meskill in Florida. The police had no arrest record for him. The trial court, over defendant's objection, allowed the prosecutor to read a transcript of Meskill's testimony from the first trial to the jury at the trial on remand. On appeal defendant contends that this decision constitutes reversible error.

■ "A witness' previous testimony may be admitted into evidence at a trial, as an exception to the hearsay rule, if the witness

has become unavailable and the current opponent of the evidence had the opportunity to cross-examine the witness at the earlier hearing." (*People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 534, 463 N.E.2d 139.) Defense counsel admitted, and the transcript shows, that defense counsel at the first trial conducted an adequate cross-examination of Meskill which the trial court did not improperly restrict. We agree with the trial court's finding that the State met its burden of showing due diligence in its efforts to locate Meskill, and therefore we hold that the trial court properly allowed the prosecutor to read a transcript of Meskill's testimony to the jury.

## IV

■ Assistant State's Attorney Julia Nowicki read defendant's written statement to the jury. She testified that defendant initially refused to answer questions because he sought immunity from prosecution, but he decided to talk about the incident after Nowicki told him that Lumpp had blamed defendant for the murder. Nowicki showed defendant a diagram that Lumpp had drawn, and defendant said, "[N]o, that's not the way it happened ***." He then gave the statement which was transcribed and read to the jury. Defendant contends that the trial court committed reversible error when it allowed Lumpp's diagram into evidence.

The admission of hearsay evidence is harmless error if "there is no reasonable possibility that the verdict would have been different had the hearsay been excluded." (*People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547.) In the case at bar eyewitness testimony corroborated defendant's convincing confession. The diagram only helped explain the circumstances surrounding the confession. We find beyond a reasonable doubt that the admission into evidence of Lumpp's diagram did not influence the jury's verdict, and therefore its admission was, at worst, harmless error.

## V

■ According to defendant's statement, John Colini told defendant that if defendant killed Bernoski, Colini would give defendant $500 to hide himself, and then give him $50,000, his own prostitution ring, and Bernoski's Lincoln Continental. Defendant agreed. Two weeks later he went with Carol Lumpp to a street near Bernoski's apartment, and they changed into new clothes in an alley. When Bernoski drove up, defendant signaled Lumpp and she approached Bernoski, saying that she was sick and asking for help. Bernoski stopped to talk to her and she shot him. He pulled Lumpp and both

fell to the ground before she shot again. Defendant pushed Bernoski off Lumpp and told her to shoot again. She shot Bernoski in the head. Defendant and Lumpp went back to the alley and changed clothes again.

At the sentencing hearing the State presented no evidence in aggravation. In mitigation defendant pointed out that he did not shoot Bernoski. Lumpp, who actually shot Bernoski, received a sentence of only 10 years when she pleaded guilty to conspiracy. The trial court sentenced defendant to 38 years because defendant "show[ed] no contriteness," and he "accept[ed] *** money to gun down this man." On appeal defendant contends that his sentence is improper because of the disparity between his sentence and Lumpp's sentence.

Our supreme court has stated:

> "[T]he trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.)

The trial court properly took into account defendant's "lack of remorse [citations] and the defendant's failure to show a penitent spirit [citations] *** in determining [his] sentence[ ]." (*People v. Ward* (1986), 113 Ill. 2d 516, 529, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) The trial court also appropriately considered in aggravation the fact that defendant agreed to murder the victim for money. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(5).) There was no evidence presented in this case to show that Lumpp had been involved in arranging payment for the murder, and she was not tried for murder on remand. We cannot say that the trial court abused its discretion in sentencing defendant to 38 years for the murder of Bernoski.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.