NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190546-U

NO. 4-19-0546

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| BRANDON A. FOSTER, | ) | No. 18CF1826 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held:* The record does not establish defendant's trial counsel was ineffective for not moving to suppress certain evidence in this case for the following reasons. Any motion (1) alleging the seizure of defendant and the truck in which he was found was unconstitutional, (2) requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), based on a challenge to the validity of the complaints for warrants to search defendant's cell phones, and (3) arguing defendant did not make a knowing and voluntary waiver of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), would have been meritless. Even assuming, *arguendo*, a motion to suppress statements made by defendant in the interrogation room before he was Mirandized and a motion to suppress evidence he refused to consent to a search of his cell phones would have been granted, no reasonable probability exists the result of defendant's trial would have been different because of the State's remaining evidence against defendant.

¶ 2    On May 24, 2019, a jury found defendant, Brandon A. Foster, guilty of possession of a controlled substance with the intent to deliver. On July 19, 2019, the trial court sentenced defendant to five years in prison and two years of mandatory supervised release with credit for time served. Defendant appeals, arguing his trial counsel was ineffective. According to defendant,

his trial attorney failed to file meritorious motions to suppress (1) evidence recovered after he and the truck in which he was a passenger were unconstitutionally seized, (2) statements made during a custodial interrogation because he did not knowingly and voluntarily waive his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and (3) evidence defendant refused to consent to a search of two cell phones found on his person at the time of his arrest. Further, defendant argues his trial counsel was ineffective because he failed to file a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the allegations contained in the complaints for warrants to search the cell phones recovered from defendant at the time of his arrest. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On December 21, 2018, the State charged defendant with one count of unlawful possession of a controlled substance with intent to deliver (more than 1 but less than 15 grams of a substance containing cocaine) (720 ILCS 570/401(c)(2) (West 2018)) and one count of unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2018)). The alleged offenses occurred on or about December 16, 2018.

¶ 5         In March 2019, Detective David Dailey of the Decatur Police Department filed two complaints for warrants to search defendant's Apple iPhone and Alcatel flip phone. Dailey noted in the complaints he had been a Decatur police officer for 23 years and a detective assigned to the street crimes unit for 18 years. According to Dailey's complaints, the information included was based on his own observations, information obtained from other police officers, information provided by other witnesses, and his experience and background as a law enforcement officer. Dailey indicated drug dealers often use cell phones to facilitate drug deals, brag about their crimes, and attempt to cover up their crimes.

¶ 6         According to the complaint, Decatur police officer Lawrence Petrey was on patrol

in a parking lot located at 1221 North Van Dyke Street at approximately 11:46 p.m. on December 16, 2018. A parked white truck, which was emitting exhaust but did not have its lights on, caught Petrey's attention. Petrey pulled up to the white truck and shined his spotlight into the cab to see if it was occupied. He observed two individuals, one of whom was Kendell Wright. At the beginning of his shift, Petrey had checked Wright's status in the Law Enforcement Agencies Data System, commonly known as LEADS, and found he was wanted on an active warrant. Petrey had prior encounters with Wright and knew Wright was known to carry a gun, possess narcotics, and flee from the police.

¶ 7        After recognizing Wright, Petrey exited his patrol vehicle and placed Wright under arrest because of the outstanding warrant. Petrey detected the strong odor of burnt cannabis coming from the truck. Another police officer, Officer Snyder, arrived and approached the passenger side of the truck and removed and searched defendant. Defendant later admitted he was smoking a cannabis cigarette (a blunt) when Petrey shined the spotlight into the cab of the truck. Defendant had $255 on his person in various denominations consistent with street-level drug sales.

¶ 8        While searching the truck, the police found a baggie containing what Petrey thought was crack cocaine in the driver's side cup holder of the center console and a digital scale on the center console with what appeared to be cocaine residue on it. While in custody, defendant claimed a woman had just dropped him off in the parking lot at 1221 North Van Dyke prior to his arrest. He then got in the truck with Wright, who he claimed he did not know, to smoke marijuana. Defendant denied knowing anything about the crack cocaine or the digital scale found in the truck. However, Petrey said he knew defendant and Wright were frequently together and associated with the same people. Defendant denied Petrey's request for consent to search his cell phones. Detective Dailey indicated he believed both phones would contain information related to the

charged offenses in this case. The trial court approved both of Detective Dailey's requests for search warrants.

¶ 9 Defendant's jury trial began on May 23, 2019. Detective Dailey testified he had worked in the street crimes unit for over 19 years and had extensive experience in narcotics investigations. The State tendered Dailey as an expert with regard to how illegal drugs are distributed.

¶ 10 Dailey testified about information he found on the two cell phones defendant possessed when he was arrested. According to Dailey, the phones contained drug related text messages and the person using defendant's phone was selling both crack cocaine and marijuana. Messages sent from the phones said "30 for 20 drop," and other messages indicated "30s for 20s." Dailey testified these messages indicated defendant was selling $30 worth of crack cocaine for $20. According to Dailey, other text messages retrieved from the phone were also drug related. Dailey testified drug dealers often use identifiers for their customers other than their actual names. Defendant had done this on his phones.

¶ 11 Officer Petrey testified he was on patrol in the parking lot of 1221 North Van Dyke at approximately 11:46 p.m. on December 16, 2018, and observed exhaust being emitted from a 2004 Chevrolet Silverado that did not have its lights on. Petrey shined his spotlight into the truck to see if it was occupied. He immediately recognized the driver of the truck was Kendell Wright, who was wanted on an outstanding warrant. Petrey was aware of Wright's history of possessing firearms, narcotics, and fleeing from police officers.

¶ 12 After shining his spotlight into the vehicle and identifying Wright, the brake lights on the truck illuminated. Petrey believed Wright was going to back into his police vehicle and attempt to flee the scene. Petrey exited his patrol vehicle, presented his firearm, and ordered the

vehicle's occupants to show their hands. Shortly thereafter, Officer Snyder arrived at the scene. Both Petrey and Snyder then approached the truck. Officer Snyder's vehicle camera recorded what occurred.

¶ 13 Petrey testified the officers searched the truck and found crack cocaine and a digital scale. The crack cocaine was found in the driver's side cup holder of the center console. The digital scale was located on top of the center console. Defendant was then placed under arrest. While searching defendant, the police found two cell phones and $255. Petrey took defendant to the police station and interviewed him. The recorded interview was played for the jury.

¶ 14 The portions of the video played for the jury showed Officer Petrey search defendant. Petrey then left the room and came back over 20 minutes later. Petrey told defendant the interview was being recorded. Petrey then asked defendant for his name, birthdate, address, phone number, the phone numbers for his two cell phones, and whether defendant had a job. When defendant said he did not have a job, Petrey asked defendant when he last had one. Defendant said about eight years earlier. Petrey then read defendant his *Miranda* rights and asked if defendant understood his rights. Defendant nodded. Petrey asked if he could give a verbal yes, and defendant did so.

¶ 15 Defendant then asked Petrey whether the police had talked to "him" yet, referring to Wright. When Petrey said yes, defendant asked what Wright said. Petrey said he was not going to tell defendant what Wright said. Defendant responded something to the effect, "He obviously didn't take his weight." Petrey asked defendant what Wright should admit he did. Defendant said another officer told him the police found something in the truck. When asked who was in the driver's seat, defendant said he did not know. Defendant also said he was high on marijuana. According to defendant, a female dropped him off at the parking lot, the truck pulled up, and he

got inside to smoke a "blunt." Defendant denied knowing anything about the scale or the crack cocaine. After a short break in the interview, Petrey asked defendant if he would consent to the police searching his phones. Defendant asked if he was going to jail. When Petrey said yes, defendant said it "was fucked up" they were both being charged. Defendant asked how two people could be charged with possessing the drugs. Defendant then said he would consent to the police searching his phones if defendant could retrieve some telephone numbers from the phones.

¶ 16        Petrey then left the interview room and returned a few minutes later with defendant's two cell phones. Petrey then asked defendant for his passcode for the iPhone. With the passcode and defendant's consent, Petrey would have had unfettered access to the information on the iPhone. Defendant refused to tell Petrey the passcode because of personal information he had on the phone. Later, Petrey told defendant he would get the phone numbers defendant needed off of the iPhone and not search the phone any further without defendant's consent if defendant provided the passcode. With the understanding he was not giving the police consent to search the phone, defendant provided Petrey with the passcode for the iPhone. In defendant's presence and with defendant's assistance as shown in the interrogation room video, Petrey retrieved the phone numbers defendant needed and provided the numbers to defendant. Then, Petrey again asked defendant if defendant would consent to a search of the cell phones. Defendant continued to deny consent. Because defendant denied consent to search the phones, the police applied for search warrants for the phones, which the trial court granted.

¶ 17        The parties offered the following stipulations. Hope Erwin, a forensic scientist with the Illinois State Police and an expert in the field of drug chemistry, would testify the substance found in the truck was 1.5 grams of cocaine. Brian Long, also a forensic scientist with the Illinois State Police and an expert in the field of latent fingerprints, would testify he did not observe any

latent fingerprints on the plastic bag corners, did not observe any latent prints on the batteries, but did observe two latent prints on the digital scale that were suitable for comparison. Neither print on the scale was a match for defendant. As for Wright, the first print was not a match, and the second print was inconclusive.

¶ 18    Defendant called Kendell Wright as a witness. Wright testified he was in the truck with defendant on the night at issue. Defendant was smoking cannabis. Wright indicated he pled guilty to possession of a weapon by a felon. As part of his plea deal, the State dropped a charge of possession of a controlled substance with the intent to deliver stemming from the December 16, 2018, incident at issue in this case. Wright testified he previously had been charged with offenses related to controlled substances and had experience with crack cocaine, tetrahydrocannabinol (THC), marijuana, and THC oil. According to Wright, a "30 for 20 drop" referred to THC oil someone would drop over marijuana, making the marijuana more potent. Wright claimed the crack cocaine found in the truck belonged to him.

¶ 19    On cross-examination, Wright testified he was friends with defendant and had known him since approximately 2014. He explained that he denied any knowledge of the cocaine and digital scale when the incident occurred because he did not want to tell on himself.

¶ 20    In rebuttal, the State introduced evidence Wright had also been charged with both unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance based on his possession of the same crack cocaine defendant was charged with possessing. However, those two charges against Wright had been dismissed and stricken as part of a plea deal in another case.

¶ 21    During the State's closing argument, it went over the instructions the jury would be provided that possession can be actual or constructive. The State then discussed the text messages,

arguing defendant was advertising he had crack cocaine for sale and then communicating with individuals about the crack cocaine. The State also discussed Officer Petrey's questioning of defendant at the police station. The Stated noted:

> "When he was interviewed by Officer Petrey in the interview room, there were several important points that Officer Petrey made. He's experienced. I think you saw he's a professional. He keeps his cool, even in pretty intense situations. He's been through this a few times.
>
> He asked the defendant if he was working. It's a standard question. Experienced police officers ask that. The reason they ask that is because if people have money in their pockets, especially if it's a relatively substantial amount of money, and somebody tells you they're not working, especially in a drug case, where'd you get the money from?
>
> It's clear here he's getting money from drug sales. He's not the most prolific drug dealer in the county, by any stretch. But $255 for someone who's not working is substantial. He's making that money off of his customers."

The State then noted some drug dealers do use drugs and defendant appeared to be under the influence of something when he was arrested. According to the State:

> "Why that's relevant to this case is when he gets arrested initially, he seems highly impaired. You could hear the officer's observations on the video. He's— you know, he's gone.
>
> When he first gets down to the station, which took, if my math is right, about 30 to—30 minutes to an hour when he's in the interview room and he's getting searched, he's still impaired to some point but he starts sobering up as we worked

our way through the interview.

At first, he granted consent to search his phone. But as he's starting to sober up and he realizes, oh, no, there's all kinds of evidence in my phone, he sobers up and he refuses consent. We call that consciousness of guilt. You know there's evidence. You're refusing to cooperate with the police because you know they, you know, you're going to get in trouble. So that's—those are very relevant points."

The State then argued this was a very simple case. Defendant had two different cell phones, and the phones contained messages related to selling drugs, specifically crack cocaine. Defendant had been talking to someone about a drug deal shortly before he was arrested in a truck where a bag of crack cocaine was found. Further, the State noted defendant's own witness, Kendell Wright, established defendant was lying to the police when defendant claimed he did not know Wright. The State also noted Wright could no longer be prosecuted for the crack cocaine found in the truck and was trying to keep defendant from getting into trouble.

¶ 22        The jury found defendant guilty of possession with the intent to deliver a controlled substance. On July 22, 2019, the trial court sentenced defendant to 5 years in prison.

¶ 23        This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25        All of defendant's arguments on appeal allege his trial counsel was ineffective for failing to file motions to suppress certain evidence. Ordinarily, to establish ineffective assistance of counsel, a defendant must both establish (1) his counsel's performance was constitutionally deficient and (2) defendant was prejudiced by his attorney's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a defendant argues his counsel was ineffective for

failing to move to suppress certain evidence, the defendant must show the unargued motion is meritorious and "a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15, 989 N.E.2d 192.

¶ 26                                    A. Unconstitutional Seizure

¶ 27        We first address defendant's argument his trial counsel was ineffective because he did not move to suppress all the evidence the police collected as a result of Officer Petrey's encounter with Kendell Wright and defendant. According to defendant, Petrey unconstitutionally seized defendant when Petrey stopped his patrol vehicle behind the truck in question and shined his spotlight into the vehicle. We note Petrey was still in his patrol vehicle at the time.

¶ 28        The act of stopping a vehicle and detaining its occupants generally constitutes a seizure pursuant to the fourth amendment of our federal constitution. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007). However, in this case, Officer Petrey did not stop the truck. Instead, the truck was parked in a parking lot when the alleged seizure occurred.

¶ 29        Relying on *People v. Luedemann*, 222 Ill. 2d 530, 857 N.E.2d 187 (2006), defendant argues Officer Petrey unconstitutionally seized the parked truck and defendant when he stopped his patrol car behind the vehicle and shined his spotlight into the cab. We note the record is not clear whether Officer Petrey actually stopped his vehicle behind the truck before recognizing Wright, who was wanted on a warrant, was inside.

¶ 30        In *Luedemann*, 222 Ill. 2d at 550-51, 857 N.E.2d at 200, our supreme court indicated the appropriate test to determine whether an individual seated in a parked vehicle has been seized is whether a reasonable innocent person in the individual's position would have believed he was free to decline a police officer's request or otherwise terminate the police encounter. "The analysis requires an objective evaluation of the police conduct in question and

does not hinge upon the subjective perception of the person involved." *Luedemann*, 222 Ill. 2d at 551, 857 N.E.2d at 200.

¶ 31            Generally speaking, a police officer's use of a flashlight or spotlight does not transform a consensual encounter into a seizure absent other coercive behavior by the police. *Luedemann*, 222 Ill. 2d at 561-62, 857 N.E.2d at 206. However, defendant argues Officer Petrey not only used a spotlight but also blocked the truck defendant was in from leaving. The supreme court in *Luedemann*, 222 Ill. 2d at 560, 857 N.E.2d at 205, did note "courts have for years found that blocking cars in their parking spots is coercive." However, the record in this case does not establish Officer Petrey *parked* his car in a manner blocking the truck from leaving before he identified Wright. As already noted, the record does not even clearly establish Petrey momentarily *stopped* his patrol vehicle when looking inside the truck with his spotlight. Further, it was only after Petrey identified Wright that he left his patrol vehicle. Based on the totality of circumstances as shown by the record in this case, Petrey did not seize the vehicle and its occupants until after he identified Wright. This is not a situation where multiple police officers surrounded defendant's car or even a situation where Petrey parked his patrol car in a manner blocking the truck's exit before he identified Wright. Here, Officer Petrey's conduct prior to exiting the patrol vehicle would not have made a reasonable innocent person in defendant's position believe he was not free to exit the truck and leave. Further, we note defendant's position would make it nearly impossible for a police officer to effectively patrol a crowded parking lot at night without unconstitutionally seizing individuals sitting in parked cars.

¶ 32            As for defendant's argument the police were looking for Wright and defendant and this was not simply a fortuitous encounter, we do not see how this affects our analysis based on the record. Even if Officer Petrey was looking for Wright or defendant in the area or this parking

- 11 -

lot, this does not establish Petrey offered any false testimony in this case or engaged in any additional coercive activity prior to identifying Wright. As a result, defendant cannot establish his trial counsel was ineffective for not filing a motion to suppress based on an illegal seizure.

¶ 33                    B. Search Warrant for Defendant's Cell Phones

¶ 34        We next address defendant's argument his trial counsel was ineffective for failing to file a motion requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge Detective Dailey's complaints for warrants to search defendant's two cell phones. Defendant points to the complaints' inclusion of Officer Petrey's explanation why his attention was drawn to the truck defendant was in and Petrey's identification of Wright as the driver of the vehicle.

¶ 35        A defendant is entitled to a *Franks* hearing if he can make a substantial preliminary showing a false statement (1) was either knowingly made in an affidavit for a search warrant or included with a reckless disregard for the truth and (2) probable cause would not have been present without the alleged false statement. While a defendant does not have to prove by a preponderance of the evidence a false statement was knowingly or recklessly included in the affidavit, a defendant is not entitled to a *Franks* hearing based on a mere allegation a false statement was included. *People v. Sutherland*, 223 Ill. 2d 187, 218, 860 N.E.2d 178, 203 (2006). The *Franks* principles also apply where information necessary to a determination of probable cause is recklessly or intentionally omitted from an affidavit. *Sutherland*, 223 Ill. 2d at 218, 860 N.E.2d at 203-04. In such cases, the defendant has to show the omitted information was material to the determination of probable cause and was not included for the purpose of misleading the judge or magistrate. *Sutherland*, 223 Ill. 2d at 218, 860 N.E.2d at 203-04. Omitted information is considered material if its inclusion in the warrant application would have defeated probable cause. *Sutherland*, 223

- 12 -

Ill. 2d at 218-19, 860 N.E.2d at 204.

¶ 36     Defendant's assertion the search warrant complaints were facially non-credible amounts to nothing more than an uncorroborated allegation. Officer Petrey's explanation for why his attention was drawn to the truck, why he illuminated the truck's cab while remaining in his police vehicle, and his immediate recognition of Wright remained consistent throughout this case. Nothing Officer Snyder said on the video recording from his patrol vehicle contradicted Officer Petrey's explanation. As we indicated in the previous section, the record does not reflect Officer Petrey seized the truck or defendant until he recognized Wright was inside the vehicle. As for defendant's assertion Detective Dailey omitted information as to why Officer Petrey was patrolling the parking lot, the record does not establish how this omission was made for the purpose of misleading the trial court or that it would have affected the trial court's probable cause determination.

¶ 37     Based on the record, probable cause existed for the trial court to issue the search warrants. Defendant does not dispute the following facts: (1) he was in the truck; (2) crack cocaine was found in the cup holder of the center console; (3) a digital scale was found in the truck sitting on top of the center console; and (4) defendant possessed the two cell phones at issue and $255 in a variety of denominations on his person. Detective Dailey's complaints for the search warrants stated the amount of crack cocaine found in the truck was indicative of distribution of the drug. Further, Detective Dailey stated he expected the phones would contain evidence of defendant's distribution of controlled substances because drug dealers often use cell phones to conduct business and to brag about their criminal conduct. As a result, we conclude defendant's trial counsel was not ineffective for failing to request a *Franks* hearing to challenge the applications for warrants to search the cell phones found in defendant's possession.

¶ 38                          C. Waiver of *Miranda* Rights

¶ 39          We next address defendant's argument his trial counsel was ineffective for not moving to suppress statements defendant made to the police after he was informed of his rights because he did not make a knowing and voluntary waiver of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant contends both Officer Petrey and Officer Snyder knew he was highly intoxicated when he was taken into custody. Yet, Officer Petrey interrogated defendant shortly thereafter.

¶ 40          In *Miranda*, 384 U.S. at 475, the Supreme Court held the State has a heavy burden of establishing a defendant knowingly and voluntarily waived his *Miranda* rights if the defendant made a statement during a custodial interrogation without the assistance of counsel. This court has stated:

> "Where the evidence plainly shows that a suspect is so grossly intoxicated that he no longer has the capacity to knowingly waive his rights, suppression of any resulting statement is warranted. [Citation.] However, where evidence of such gross intoxication is less than clear, *** the fact that the suspect has been drinking does not render his statement inadmissible but goes only to the weight to be accorded it." *People v. Feagans*, 134 Ill. App. 3d 252, 259, 480 N.E.2d 153, 158-59 (1985).

In other words, a defendant can be intoxicated and still knowingly and intelligently waive his *Miranda* rights and make a voluntary statement. *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶¶ 15, 18, 959 N.E.2d 703.

¶ 41          After considering the totality of the circumstances and watching the video recording of defendant's custodial interrogation, defendant does not appear so grossly intoxicated he could

not make a knowing and voluntary waiver of his *Miranda* rights. Instead, contrary to defendant's argument, the video of the interview shows defendant clearly indicated he understood his rights. As the State points out, defendant began asking questions of the interviewing officer almost immediately and tried to shift the blame for any illegal activity to Wright. As a result, defendant's trial counsel was not ineffective for not moving to suppress statements defendant made to the police after he was Mirandized because of defendant's alleged intoxication.

¶ 42                                    D. Other Evidence

¶ 43           Defendant also argues his trial counsel was ineffective because he did not move to suppress information—telephone numbers and defendant's employment history—defendant provided Officer Petrey in the interview room before defendant was Mirandized. Defendant also contends his attorney was ineffective because he did not move to suppress defendant's refusal to consent to a search of his two cell phones. Assuming, *arguendo*, these motions would have been granted, a reasonable probability does not exist the result of this case would have been different. As previously stated, when a defendant argues his counsel was ineffective for failing to move to suppress certain evidence, the defendant must show the motion would have been granted and "a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15, 989 N.E.2d 192.

¶ 44           Even without this evidence, the State's case was very strong. The police found defendant in the truck with a digital scale and an amount of crack cocaine indicative of distribution. Neither the scale nor the drugs were hidden, and both were accessible to defendant. Defendant had two cell phones on his person at the time of his arrest. The State would still have the evidence acquired from the cell phones, including text messages indicating defendant was attempting to sell both crack cocaine and marijuana. In addition, the State would still be able to present most of

defendant's custodial interrogation, including where he told the police a female had dropped him off in the parking lot, he did not know the driver of the truck, and he just got in the truck to smoke a "blunt." Defendant's own witness, Kendell Wright, contradicted defendant's statement to the police, indicating he and defendant were friends and had known each other for an extended period. As a result, defendant was not prejudiced by his trial counsel's failure to move to suppress his pre-*Miranda* statements and evidence he refused to consent to the police searching his cell phones.

¶ 45                                 III. CONCLUSION

¶ 46          For the reasons stated, we affirm the trial court's judgment.

¶ 47          Affirmed.