JUSTICE MEJDA
 

 delivered the opinion of the court:
 

 Following a jury trial defendant Douglas Lee Rhodes was found guilty of attempted murder and unlawful use of weapons and sentenced to concurrent terms of 10 years and five years on the respective convictions. Three issues are raised on appeal: (1) whether the court erred in denying Rhodes’ motion to suppress confessions; (2) whether the court erred in instructing the jury; and (3) whether the State established Rhodes’ guilt beyond a reasonable doubt. We affirm.
 

 On August 10, 1980, police officers Fred Wheat and Everett Johnson were on special assignment investigating stolen automobiles. At approximately 10:30 p.m. they had parkéd their unmarked car at the end of an alley in the area of 6734 South Eberhart and were proceeding on foot toward several vehicles parked in the alley when they came upon defendant Rhodes. The evidence pertaining to the nature of the ensuing confrontation is in conflict and will be discussed in detail below. In any event, Rhodes eventually was handcuffed and given Miranda warnings following which he made the first of three inculpatory statements. Rhodes was then transported to the police station and again advised of his Miranda rights. In the presence of Officers Wheat and Johnson and two other officers he made a second inculpatory statement. Rhodes’ third inculpatory statement occurred before an assistant State’s Attorney and two police officers not previously involved. This statement also was preceded by a repetition of the Miranda warnings. After his conversation with the assistant State’s Attorneys, Rhodes was taken to Jackson Park Hospital for treatment of injuries incurred at the time of his arrest. A photograph of him was taken at the time of his admission. He was transferred on August 11 to Cook County Hospital and underwent diagnostic tests for tuberculosis. The tests proved negative on August 13. Rhodes was discharged from the hospital on August 18.
 

 Rhodes was charged with one count of unlawful use of weapons and one count of attempted murder. Prior to trial he filed a motion to suppress any evidence of the alleged confessions on the grounds that (1) due to his physical and physiological condition, he was incapable of understanding the full meaning of the Miranda rights, and (2) the statements sought to be suppressed were obtained as a result of physical, psychological and mental coercion and were, therefore, involuntary.
 

 The following testimony was adduced at the hearing on the motion to suppress. Officer Fred Wheat testified that on the evening of August 10, 1980, he was working in plain clothes with his partner, Officer Everett Johnson. At approximately 10:30 p.m. he was walking in the alley near 6734 South Eberhart when he first saw the individual later identified as defendant Rhodes about four feet away, coming from between two trucks. Rhodes spoke and pointed a sawed-off shotgun at Wheat. Wheat announced that they were police officers whereupon Rhodes stated that he was going to kill them. Wheat grabbed for the shotgun and a violent struggle ensued, lasting from two to five minutes, during which Johnson hit Rhodes in the face with his gun and Wheat “kneed” Rhodes several times. Wheat and Johnson finally prevailed and succeeded in handcuffing Rhodes while he was on the ground. Rhodes had continued struggling on the ground until he was handcuffed. After Rhodes was handcuffed, Officer Johnson read him the Miranda warnings and Rhodes then made an inculpatory statement. By that time other officers were arriving at the scene in response to the officers’ radio calls for assistance. Wheat testified that he. did not strike Rhodes and did not observe anyone else strike Rhodes after he was handcuffed. Wheat testified that Rhodes’ nose was bleeding when he was put into the squadrol for transport to the police station. At the police station, in the presence of Officers Johnson and Roden, Officer Gilmore read Rhodes his Miranda rights and Rhodes indicated that he understood them. Rhodes at that time made the second inculpatory statement. At no time did Rhodes complain of injuries or of having been beaten or request to be taken to a hospital. Rhodes did not indicate reluctance to answer questions nor did he ask to consult a lawyer. He was able and cooperative in answering questions. Wheat stated that he saw Rhodes immediately before and after his interview with the assistant State’s Attorney and that he appeared to be in the same physical condition at both times.
 

 Officer Everett Johnson’s testimony regarding the events of August 10, 1980, corroborated that of Officer Wheat. In addition, Officer Johnson stated that he hit Rhodes more than once during the struggle over the shotgun. Johnson further stated that Rhodes was able to walk under his own power to the squadrol and that the only injury he observed at that time was that Rhodes’ nose was bleeding. At the police station, after being advised by Officer Gilmore of his Miranda rights, Rhodes said that he understood and then answered clearly the questions asked by Gilmore. Johnson stated that he observed Rhodes enter an inner, office with a State’s Attorney and two investigators and that Rhodes’ physical condition was the same when he exited that office. Johnson stated that at no time after Rhodes was handcuffed did he or anyone else strike Rhodes. At no time did Rhodes complain of injury or ask to be taken to a hospital, nor did he indicate that he did not want to answer questions put to him by police or ask to consult a lawyer.
 

 Officer Edward L. Gilmore testified that on August 8, 1980, when he and his partner, Officer Victor Roden, arrived at the alley near 6734 South Eberhart, he observed Officer Johnson reading the Miranda warnings to Rhodes who was on the ground being handcuffed. Officer Gilmore stated that he next saw Rhodes at the police station. Rhodes’ clothes were disarranged and he noticed dried blood around Rhodes’ nose but saw no fresh cuts. Gilmore read Rhodes the Miranda warnings in the presence of Officers Wheat, Johnson and Roden. Rhodes indicated that he understood the warnings and gave clear, cogent responses to the questions he was asked. Rhodes did not request a lawyer and did not complain of injuries or ask for medical care. Officer Gilmore testified that he did not strike Rhodes and did not see anyone else strike Rhodes either at the scene of the arrest or in the police station.
 

 Officer Victor Roden testified to the same occurrences. When he arrived at the scene of the arrest, Officer Wheat was handcuffing Rhodes, who was on the ground, and Officer Johnson was reading Rhodes his Miranda rights. Roden observed that Rhodes’ nose was bleeding but that the blood had dried when he saw Rhodes at the police station. At the police station Rhodes acknowledged the second reading of his Miranda rights and readily answered questions. At no time did Officer Roden see anyone strike Rhodes. Nor did he hear Rhodes complain of having been beaten by the police or request to be taken to a hospital.
 

 Officers Guiney and Gahan testified that, upon their arrival at the scene of the arrest, they saw Rhodes being put into the squadrol to be transported to the police station. Neither of them saw anyone strike Rhodes.
 

 Officer Joseph Theilmann testified that he drove the squadrol on the evening in question and transported Rhodes from the alley at 6734 South Eberhart to the Third District Station. He did not see anyone strike Rhodes. Rhodes did not complain of being beaten and was able to walk without assistance. On cross-examination Theilmann stated that if it appears that a person is in need of hospitalization, he takes him to the hospital, regardless of whether he so requests.
 

 Assistant State’s Attorney William Rehling testified that he interviewed Rhodes at about 12:15 a.m. on August 11, 1980, with Detective David Oravetz and Detective James Minogue present. Rehling noticed that Rhodes’ clothes were blood-stained and disheveled but he observed no sign of injury. Upon inquiry, Rhodes stated that he was all right and that his clothes were disarranged when the police officers were struggling to get his gun away from him. Rehling gave Rhodes the Miranda warnings and Rhodes indicated that he understood and would waive those rights. He did not ask to consult a lawyer and answered all questions willingly and clearly. He did not complain of having been beaten or of any injuries and did not ask to be taken to a hospital. Rehling did not strike Rhodes, nor did he observe anyone else strike him.
 

 The testimony of Officers Minogue and Oravetz was substantially the same as that of the assistant State's Attorney. Neither of them saw anyone strike Rhodes nor did either of them observe signs of Rhodes having been beaten. Rhodes did not complain of having been beaten or ask to be taken to a hospital or to consult with a lawyer.
 

 Defendant Douglas Rhodes testified that he was only a few inches away from Officer Wheat when he first saw him on August 10, 1980. He stated that he relinquished the gun without a fight or struggle and that he was beaten, kicked and dragged up and down the alley by Officers Wheat and Johnson; no other officers were present. He said he was afraid of the police officers and made the statements to them under threats of further beating. Rhodes stated that, at the police station, Officer Wheat struck him in the face and that he was thrown on the floor and kicked. With respect to his interview by the assistant State’s Attorney, Rhodes said that he was forced to sign statements under threats of further beating. He stated that his nose was broken and bleeding and that no one offered him any treatment for it. He was in pain throughout the time he was in the police station but did not mention it because he had been told to be quiet.
 

 Howard Jones testified that on the evening of August 10, 1980, he was 30 to 50 feet from two police officers and a man he later identified as Rhodes when he saw one of the officers kick Rhodes, who was on the ground rolling from side to side with his hands and arms covering his face. He did not see Rhodes struggle or fight back and stated that the police were not trying to handcuff Rhodes at the time of the kicking. As other officers arrived Jones approached the scene and was within five to 10 feet of Rhodes when he was taken away.
 

 Larry Pappas, M.D., an intern in internal medicine at Cook County Hospital, testified that when Rhodes came into his care he was suffering from a broken nose, swelling around the right eye, soft tissue swelling and abrasions on his back and blood in the urine. He stated that Rhodes’ facial injuries were consistent with the types of blows described by Officers Wheat and Johnson and that internal bleeding is consistent with repeated kicking or beating but found that the back injuries were not consistent with having been struck with a hand or kicked with knees or feet.
 

 The court found that: (1) there was no improper beating of Rhodes; (2) Rhodes’ injuries were not of sufficient severity to warrant a conclusion that he was capable of making a voluntary statement; and (3) the police did not use force so excessive as to put Rhodes in fear of further abuse. The court concluded, therefore, that Rhodes’ inculpatory statements were not involuntary and, accordingly, denied Rhodes’ motion to suppress.
 

 Officers Wheat, Johnson and Gilmore and Assistant State’s Attorney Rehling testified at trial. Their testimony as to the arrest, Rhodes’ condition and the circumstances surrounding the interviews and statements was substantially the same as their suppression hearing testimony. In addition, the following testimony was presented.
 

 Officer Wheat stated that as Rhodes advanced toward him in the alley he had cocked the shotgun which rendered it capable of firing and had moved his finger toward the trigger. Wheat testified that he had “kneed” and kicked Rhodes during the struggle for control of the shotgun. He said that when asked why he had attacked them, Rhodes answered that he was going to stick them up but decided to kill them when he discovered they were police officers. Wheat stated that Rhodes made substantially the same statement at the police station with Officers Johnson, Gilmore and Roden also present. Finally, Wheat testified that he had examined the shotgun after it was taken from Rhodes and that it was loaded; the barrel of that weapon measured 145/s inches.
 

 Officer Johnson’s testimony regarding the events leading up to Rhodes’ arrest and Rhodes’ inculpatory statements was identical to Officer Wheat’s testimony.
 

 Officer Gilmore testified that, at the police station, Rhodes had told him that he was on his way to rob a block party when he saw Officers Wheat and Johnson and had decided to rob them before he robbed the party. Upon discovering that they were police officers, he “realized he had to kill them.’ ’
 

 Assistant State’s Attorney Rehling testified that Rhodes orally acknowledged and waived his Miranda rights. In response to Rehling’s questions Rhodes stated that during the struggle with Officers Wheat and Johnson he was trying to get his finger on the trigger of the gun because he was trying to kill the two officers. Rehling said that his conversation with Rhodes was not reduced to writing and Rhodes did not sign a confession.
 

 Finally, Grace Henderson testified at trial that on the evening of August 10, 1980, a party was held at 6714 South Eberhart for the purpose of raising money for charity.
 

 The defense presented no evidence at trial.
 

 The jury found Rhodes guilty of unlawful use of weapons and attempted murder and the court imposed sentence.
 

 Opinion
 

 I
 

 The first issue raised is whether the trial court erred in denying the motion to suppress confessions. Rhodes contends generally that his alleged confessions were not voluntary and were, therefore, inadmissible. The test of whether a statement is admissible at trial is “whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant’s will was overcome at the time he confessed.” (People v. Prim (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, cert, denied (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) This determination depends upon the totality of the relevant circumstances surrounding the making of the statement including the existence of any threats, promises or physical coercions; the length and intensity of the interrogation; and the age, intelligence, experience and physical condition of the defendant. (People v. Rhoads (1979), 73 Ill. App. 3d 288, 391 N.E.2d 512.) In making its determination as to the voluntary nature of the confession the trial court is not required to be convinced beyond a reasonable doubt. (People v. Medina (1978), 71 Ill. 2d 254, 375 N.E.2d 78.) The finding of the trial court on this question will not be disturbed on review unless it is contrary to the manifest weight of the evidence. People v. Medina.
 

 Rhodes first argues that the State failed to meet its burden of showing that his injuries were not the result of unnecessary force used to coerce his confessions. Specifically, he contends that the medical testimony regarding the injury to his back and torso was consistent with his claim of brutality and that the State offered no evidence to rebut this testimony or to explain how the injury occurred.
 

 Where the voluntary nature of a confession or statement is called into question by a motion to suppress, the State has the burden of proving that the statement or confession was voluntarily made. (People v. Armstrong (1972), 51 Ill. 2d 471, 282 N.E.2d 712.) “A confession obtained by force or brutality is not voluntary and is inadmissible.” (People v. Davis (1966), 35 Ill. 2d 202, 205, 220 N.E.2d 222.) It is undisputed that Rhodes was injured at the hands of the police and that treatment for his injuries required hospitalization. Contrary to Rhodes’ contention, however, the evidence that his injuries were sustained in the struggle with the police for control of the shotgun was sufficient to sustain the trial court’s finding that there was no improper beating. In the instant case Dr. Pappas stated that Rhodes’ fractured nasal bone and swollen eye were consistent with Officer Johnson’s testimony that he struck Rhodes in the face with his gun. Dr. Pappas further stated that blood in Rhodes’ urine was not inconsistent with the officers’ admissions of striking and “kneeing” Rhodes while struggling for control of the shotgun. The soft tissue swelling and abrasions on Rhodes’ back were consistent with Officer Wheat’s testimony that Rhodes continued to struggle on the ground until he was handcuffed. In addition to the medical testimony, there were denials of abuse by both arresting officers, six other police officers and the assistant State’s Attorney. The record here shows that the State met its burden of proof and, therefore, the trial court did not err in finding that the statements were not the result of unnecessary force.
 

 Defendant also contends that the State failed to meet its burden in that the testimony of Howard Jones was unrebutted. It is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. Where the evidence is in conflict a court of review may not substitute its judgment for that of the trier of fact. (People v. Akis (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) The court in the instant case noted the inadequacy of Jones’ vantage point and observed that the testimony of the events surrounding the arrest was otherwise uncontradicted. The record here adequately supports a finding that the State met its burden of proof.
 

 In addition, Rhodes contends that the State’s failure to produce a photograph taken at the hospital at the time of his admission supports a finding of involuntariness, citing People v. Wilson (1973), 16 Ill. App. 3d 473, 481, 306 N.E.2d 626. Rhodes asserts that the photograph would have been highly relevant to the issues of police misconduct and the obviousness of his physical injuries. The question implicit in Rhodes’ contention is whether the State’s failure to produce the photograph mandated a finding of involuntariness. We find that it did not. The court was bound to base its determination of the voluntariness of Rhodes’ statements on the “totality of all the relevant circumstances.” (16 Ill. App. 3d 473, 479.) One such circumstance was the fact of Rhodes’ injury. It is our opinion that the photograph would have been duplicative of the medical testimony presented by the defense and its evidentiary value was, therefore, minimal. Thus, Rhodes was not prejudiced in his ability to present evidence supporting his contention of involuntariness because the trial court was apprised of the extent of injuries by the medical testimony. Furthermore, we note that in its determination as to the voluntariness of Rhodes’ statements, the trial court was free to consider the State’s failure to produce the photograph and any inference that could be drawn therefrom. We, therefore, find that the court did not err in finding Rhodes’ statements voluntary, notwithstanding the State’s failure to produce the photograph.
 

 Rhodes next contends that even if he was not subjected to unnecessary force, his physical condition rendered him incapable of confessing voluntarily. He argues that the severity of his injuries, evidenced by his subsequent week-long hospitalization, and the proximity in time between his injury and purported confession establish the involuntariness of his confession.
 

 Although a defendant’s physical or emotional condition at the time of questioning is an element to be considered as to whether it is voluntary (see Mincey v. Arizona (1978), 437 U.S. 385, 396-402, 57 L. Ed. 2d 290, 302-06, 98 S. Ct. 2408, 2415-18), the trial court must, nevertheless, make its determination of voluntariness from “the totality of the circumstances” and that determination will not be disturbed on review unless it is against the manifest weight of the evidence. (People v. Medina (1978), 71 Ill. 2d 254, 375 N.E.2d 78.) In the instant case the circumstances in evidence surrounding Rhodes’ statements are sufficient to sustain the trial court’s finding of voluntariness. At no time during questioning by the police did Rhodes complain of injury or ask to be taken to the hospital. His answers were clear and cogent. The fact of Rhodes’ injury was simply a factor to be considered by the trial court; the mere existence of pain is not sufficient to render a statement involuntary. (People v. Byrd (1980), 90 Ill. App. 3d 429, 434, 413 N.E.2d 148.) There was no evidence that the pain suffered by Rhodes was of such nature and extent as to overcome his ability to understand either the Miranda warnings or the implications of his statements. (See People v. Byrd.) Therefore, the trial court’s failure to find Rhodes incapable of confessing voluntarily cannot be said to be against the manifest weight of the evidence and, therefore, will not be disturbed on review.
 

 Rhodes next contends that his confessions were not preceded by a valid waiver of his Miranda rights. He argues that the same facts which rendered his confessions involuntary also establish that he did not effectively waive his Miranda rights.
 

 The test as to whether a defendant has made a knowing waiver of rights was enunciated by the supreme court in People v. Turner (1973), 56 Ill. 2d 201, 205-06, 306 N.E.2d 27, wherein the court, quoting from Johnson v. Zerbst (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, stated: “A waiver is ordinarily an intentional relinquishment or abandonment of known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” The finding of the trial court is not to be disturbed unless it is against the manifest weight of the evidence. People v. Wipfler (1977), 68 Ill. 2d 158, 368 N.E.2d 870.
 

 The uncontradicted evidence adduced at the suppression hearing was that Rhodes was advised of his Miranda rights before each inculpatory statement, that he stated that he understood them and that he indicated his willingness to answer questions. At no time did Rhodes request an attorney or cut off questioning in any way. The existence of pain is a factor to be considered but is not, by itself, determinative of voluntariness. (See People v. Walden (1976), 43 Ill. App. 3d 744, 357 N.E.2d 232.) Rhodes here asserts that his pain was sufficient to render him incapable of waiving his Miranda rights but at no time during questioning did he complain of injury or ask to be taken to a hospital. Thus, there is no evidence that the pain suffered by Rhodes was of such nature and extent as to overcome his ability to understand the Miranda warnings or the implications of his statements. The trial court’s finding that Rhodes’ statements were voluntary is, therefore, not against the manifest weight of the evidence.
 

 For all of the foregoing reasons we are unable to find that Rhodes’ statements were involuntary and, accordingly, we find no error in the denial of his motion to suppress.
 

 II
 

 The second issue raised is whether the court committed reversible error in instructing the jury. The jury found Rhodes guilty of attempted murder under the following instructions:
 

 “A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.
 

 The crime attempted need not have been committed.” Illinois Pattern Jury Instruction (IPI), Criminal, No. 6.05 (1968).
 

 “A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill *** that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death *** to that individual.” IPI Criminal No. 7.01.
 

 “To sustain the charge of attempt, the State must prove the following propositions:
 

 First: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and
 

 Second: That the defendant did so with intent to commit the crime of murder.” IPI Criminal No. 6.07.
 

 Rhodes argues that the court erred in instructing the jury on the elements of the offense of attempted murder because the jury was not required to find that Rhodes had a “specific intent to kill” but, instead, only that he had intended to commit the crime of murder, which crime does not require the intent to kill.
 

 The crime of attempt is a specific intent crime. “An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown.” (People v. Harris, consolidated with People v. Shields (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28.) In People v. Morano (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816, the jury received instructions on the offense of attempted murder, which instructions were identical to those here at issue. The Morano court found that the specific intent to kill is evidenced by engaging in conduct which creates a “strong probability of death,” the third alternative description of murder, and found a similar specific intent evident in the first and second alternative descriptions. The court held, therefore, that the jury was properly instructed on the elements of the offense of attempted murder. We find Morano dispositive. Accordingly, the court in the instant case did not err in instructing the jury on the elements of the offense of attempted murder.
 

 Ill
 

 The third issue raised on review is whether Rhodes was proved guilty beyond a reasonable doubt. Rhodes contends that the severity of his injuries considered in conjunction with various inconsistencies in the officers’ testimony call into question the credibility of such testimony. It is well established that a reviewing court will not set aside a jury’s verdict unless the evidence presented at trial is so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt. (People v. Yarbrough (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) The credibility of the witnesses and the weight to be given to their testimony and the inferences to be drawn therefrom are solely for the jury. People v. Harris (1972), 53 Ill. 2d 83, 288 N.E.2d 873.
 

 We have examined the alleged discrepancies in the trial testimony and find them to be insignificant. The evidence presented at trial was set forth herein and need not be repeated. Upon a review of the entire record, we find that there was sufficient credible evidence from which the jury could have found Rhodes guilty beyond a reasonable doubt of the offenses of unlawful use of weapons and attempted murder.
 

 For the foregoing reasons, the judgment is affirmed.
 

 Affirmed.
 

 WILSON, P.J., and SULLIVAN, J., concur.