THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER HOLLEN, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER HOLLEN, Defendant-Appellant.

Second District   Nos. 2—88—0109 through 2—88—0113 cons.

Opinion filed August 31, 1989.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Fred Foreman, State's Attorney, of Waukegan (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Walter Hollen, brought five separate appeals from convictions in the circuit court of Du Page County and the circuit court of Lake County. In case No. 2—88—0109, defendant appeals his conviction of armed robbery from the circuit court of Du Page County. In case Nos. 2—88—0110, 0111, and 0112, defendant appeals his convictions on three counts of armed robbery from the circuit court of Lake

County. In case No. 2—88—0113, defendant appeals his convictions of home invasion and armed violence from the circuit court of Lake County. These matters have been consolidated for disposition. Defendant raises three issues on appeal. Defendant first argues that the trial courts erred in denying his motions to suppress post-arrest statements and evidence obtained through those statements on the basis that the statements were involuntary. Defendant also argues that his convictions from the circuit court of Lake County should be remanded for resentencing on the basis that the court improperly considered defendant's receipt of proceeds from the armed robberies as an aggravating factor in sentencing. Finally, defendant argues that, should this court reverse his convictions from either county, his remaining convictions should be remanded for resentencing since each court referred to his convictions from the other during sentencing. We affirm.

In case No. 2—88—0109, defendant was convicted of armed robbery following a stipulated bench trial in Du Page County. At a subsequent stipulated bench trial in Lake County, defendant was convicted of home invasion, armed violence, and three counts of armed robbery in case Nos. 2—88—0110, 88—0111, 88—0112, and 88—0113. In case No. 2—88—0109, the circuit court of Du Page County sentenced defendant to 25 years' imprisonment. In the remaining cases, the circuit court of Lake County sentenced defendant to 30 years' imprisonment to be served consecutive to the Du Page County sentence. Prior to each trial, defendant brought a motion to suppress statements and evidence. The facts necessary for an understanding of our disposition can be summarized from the hearings on the motions to suppress brought in the respective actions.

CASE NO. 2—88—0109

The following evidence was presented at the hearing on the motion to suppress in the circuit court of Du Page County. On March 12, 1987, at approximately 1:10 a.m., Sergeant David Klenepaste of the Roselle police department received a call concerning an armed robbery at a gas station. Klenepaste proceeded to the area of the robbery and observed a subject wearing dark clothing standing behind some bushes. Klenepaste gave chase when the subject fled, but subsequently lost sight of him. At approximately 2:12 a.m., Klenepaste saw the same subject again. The subject walked around the corner of a house with his hands in the air and called out to Klenepaste. Klenepaste directed the subject to lie face down on the ground, and fellow Roselle police officer Robert Thomas conducted a pat-down search. The subject said that his shoulder was in pain and told the officers

that he had fallen over a brick retaining wall. Both officers identified defendant as the subject they stopped and searched.

Klenepaste and Thomas testified that they observed defendant "wince" in pain and summoned an ambulance. Due to defendant's complaints of shoulder pain, Klenepaste handcuffed only one of defendant's hands. Klenepaste testified that he then read defendant his *Miranda* rights from a card and defendant stated that he understood those rights. An ambulance arrived within approximately five minutes of the call, and Klenepaste left defendant in the custody of Thomas and another police officer, George Kasnick.

Thomas testified that the paramedics initially treated defendant on the ground and then placed him on a stretcher and into the ambulance. Thomas stated that he entered the ambulance with defendant and asked him whether he recalled his rights as read to him by Klenepaste. Thomas stated that defendant replied in the affirmative but made no statement at that time. Thomas testified that he asked defendant the time and that defendant looked at his watch and stated the correct time. Thomas then asked defendant where he had left his mask, gun, and money. Defendant responded that the items were left in a parking lot. Thomas then exited the ambulance to search the parking lot, while Kasnick remained in the ambulance with defendant.

Fireman-paramedic Burt Lancaster testified that he received a call for his advanced life support system ambulance at approximately 2:13 a.m. and arrived at the scene at 2:18 a.m. Lancaster examined defendant, took his vital signs, and placed a triangular bandage on his shoulder for a splint, while another paramedic examined defendant's knee and placed ice on it. Lancaster stated that the treatment took approximately 8 to 10 minutes. Shortly thereafter, a basic life support system ambulance arrived, and the paramedics transferred defendant to the second ambulance. Lancaster stated that he did not delay or withhold treatment from defendant and was not instructed to do so.

Officer George Kasnick of the Roselle police department testified that he arrived at the scene as Thomas and Klenepaste were arresting defendant. Kasnick stated that defendant was read his rights and an ambulance was called because defendant complained of shoulder and knee injuries. Kasnick further testified that he remained in the ambulance with defendant throughout his treatment. Kasnick testified that his conversation with defendant continued contemporaneously with the treatment rendered by the Roselle fire department personnel. Kasnick stated that he asked defendant if he would show the police exactly where the gun and the money from the armed robbery were located. Kasnick testified that the ambulance transporting

defendant drove to a parking lot and defendant told him that the gun, the money, and the mask were hidden beneath a red automobile in the lot. Kasnick relayed this information to Thomas, and the ambulance then proceeded to the hospital.

Daniel Schmidt, a fire fighter and emergency medical technician (EMT) in the basic life support system ambulance, testified that he received an ambulance call at approximately 2:15 a.m. Upon review of the dispatch records, Schmidt stated that his ambulance arrived at the scene at 2:26 a.m. Schmidt testified that he and a fellow EMT, John Niemman, talked with defendant and obtained his history. Schmidt recalled Kasnick asking defendant if he could tell him where he had put the gun, the money, and the mask, and defendant answering that he could. Schmidt stated that defendant appeared to be relaxed. Schmidt testified that the ambulance left for the hospital at 2:48 a.m. and arrived at 2:56 a.m. Schmidt testified that the ambulance first drove through a parking lot at Kasnick's request, but stated that the detour resulted in a delay of only 30 to 60 seconds. The remaining fire fighters' testimony corroborated that of Kasnick and Schmidt.

Sergeant Olliges, a detective with the Roselle police department, stated that he arrived at Alexian Brothers Hospital at approximately 3:45 a.m. Olliges testified that defendant was released at 4 a.m., whereupon Olliges transported defendant and Kasnick to the Roselle police station. Olliges testified that he advised defendant of his *Miranda* rights at the police station. The trial court sustained defendant's objection to further testimony regarding Olliges' conversations with defendant at the police station. Defendant noted that any questioning after defendant left the hospital was beyond the scope of his motion to suppress. Olliges' remaining testimony revealed that defendant was given aspirin by a Roselle police officer at approximately 6:30 a.m.

Defendant subsequently testified that he was arrested by a Roselle police officer in the early morning hours of March 12, 1987. At the time of his arrest, defendant was suffering from previously sustained injuries to his shoulder and knee. Defendant conveyed this information to the police officer. Defendant stated that the police officer told him to "hit the ground," and then put his knee on defendant's back and grabbed his right arm to handcuff it. Defendant stated that he remained on the ground approximately five minutes before an ambulance arrived. The police then handcuffed him to a stretcher. Defendant testified that a police officer continuously questioned him about the location of a gun, to which he denied any knowledge.

Defendant stated that the officer told him that the sooner he revealed the location of the gun the sooner they would leave. Defendant testified that this conversation took place in the first of two ambulances. Defendant stated that he was in the first ambulance approximately 10 minutes during which time the ambulance staff checked his vital signs but did not render any treatment. Defendant testified that he made continuous requests to see a doctor or to obtain medication for his pain but was told by the paramedics that they were unable to do anything and that he would have to wait until he saw a doctor. Defendant said that he did not remember being placed into a second ambulance; however, he did recall being transported to the hospital. Defendant testified that the ambulance took a detour into a parking lot that lasted approximately three minutes. Once in the parking lot, the ambulance door opened, and the police officer asked defendant if he recognized anything. Defendant answered in the affirmative, and the ambulance proceeded to the hospital. Defendant admitted that he was neither refused medical treatment nor denied transportation to the hospital. On cross-examination, defendant testified that the police did not do anything to cause his injuries, but stated that they did delay his transportation to the hospital.

Following arguments, the trial court concluded that the State satisfied its burden of proving that defendant's statements were freely and voluntarily given and therefore denied defendant's motion to suppress. The court observed that while the evidence showed that defendant's injuries caused him pain, the weight of the evidence indicated that defendant's condition was comfortable and there was no evidence of force, intentional delay, or deprivation of medical treatment. The court further found that the deviation taken by the ambulance from its direct hospital route was minimal.

CASE NOS. 2—88—0110, 0111, 0112, and 0113

The following evidence was presented at the hearing on the motion to suppress in the circuit court of Lake County. While defendant was in the custody of the Roselle police department, he reportedly confessed to numerous crimes committed in Lake County. Detective Gilbert Farrow of the Lake County sheriff's department interviewed defendant at 10:22 a.m. in a room provided by the Roselle police department. Farrow was accompanied by Sergeant James Busch of the Fox Lake police department. Farrow testified that he reviewed defendant's *Miranda* rights with him, and defendant signed a waiver form witnessed by Farrow and Busch. After some preliminary discussion, defendant agreed to answer questions concerning robberies com-

mitted in the Lake County area and consented to tape-recording the interview. Busch read defendant his *Miranda* rights a second time and then conducted a taped-recorded interview from 10:40 to 10:47 a.m. during which defendant confessed to an armed robbery that occurred on August 21, 1986. Farrow also conducted a taped-recorded interview from 11:10 to 11:15 a.m. during which defendant confessed to armed robberies that occurred on November 25, 1986, and December 5, 1986. The tape recordings were admitted into evidence.

Sergeant James Simoncelli of the Round Lake Beach police department testified that he interviewed defendant at 12:05 p.m. concerning various crimes committed in his jurisdiction. Simoncelli stated that he reviewed defendant's *Miranda* rights with him and defendant signed a waiver form witnessed by Simoncelli and Gary Bitler, also of the Round Lake Beach police department. Simoncelli testified that he was acquainted with defendant and recalled that they joked about defendant's shoulder injury, as Simoncelli had previously injured his own shoulder when chasing defendant in an unrelated incident. Simoncelli testified that defendant agreed to be interviewed and consented to tape-recording the interview. Simoncelli then conducted a taped-recorded interview during which defendant confessed to committing numerous crimes in the Round Lake Beach area. The tape recording was admitted into evidence.

All of the State's witnesses indicated that defendant did not appear to be intoxicated or under the influence of drugs at the time of questioning. Each police officer testified that defendant's speech was coherent and at no time did he request an attorney. The officers further testified that defendant never requested that questioning cease, nor did he state that he was in too much pain or too fatigued to continue the interviews.

Defendant subsequently testified that the night before his arrest he had worked all night helping a friend remodel a house. At approximately 2 a.m. on March 12, 1987, defendant was arrested by the Roselle police department. Defendant complained of shoulder and knee injuries and was placed in an ambulance. Defendant stated that a police officer in the ambulance read him his *Miranda* rights, and, after considerable questioning and driving around, he was taken to a hospital and treated. Defendant was released from the hospital at approximately 4 a.m. and transported to the Roselle police department, where a detective questioned him. Defendant stated that this conversation took 1½ to 2 hours, after which he was taken to a cell where he remained until approximately 8 a.m. Defendant stated that the police then allowed him to visit with his girlfriend for approximately

one-half hour. Thereafter, a Roselle police officer took defendant into a room and gave him a doughnut and a cup of coffee.

Defendant stated that he was eventually taken to another room to meet Detective Farrow and Sergeant Busch and was not given any further opportunity to sleep, eat, or drink. Defendant testified that he experienced a sharp, stabbing pain in his shoulder and knee as the interview progressed. He admitted that his shoulder was in a bandage and that he had an ice pack on his knee. He stated that he was tired throughout the interview, but did not ask that the interview cease or seek further medication for the pain. Defendant stated that he thought his fatigue and pain were obvious and that any efforts to end the interviews would be futile.

On cross-examination, defendant admitted that he received medical treatment from paramedics on the scene at the time of his arrest. Defendant further admitted that a doctor set his dislocated shoulder and that he was given two pain relievers. Defendant identified his signature at the bottom of two *Miranda* forms he had signed and recalled being read his rights by Farrow and Simoncelli. Defendant also identified his voice on the tape-recorded interviews and admitted that the conversations contained therein were accurate. Defendant stated that he did not request medical attention from any of the police officers with whom he spoke because he believed it would not do any good since they had driven such a long way to interview him.

At the close of evidence, the trial court denied defendant's motion to suppress, stating:

"As the State's Attorney pointed out, some six hours after that interrogation [by Roselle police officers] is when the statements here occurred, and that's after he has received medical treatment, not only by the ambulance's paramedics but by the doctors and nurses in the hospital. It is after he slept for some period of time, which could have been through his own testimony a time of up to two hours, although he says he thinks it was only half an hour. It is after he had a coffee, donut, after he had spent some time with his girlfriend alone I take it. He has been in the lounge during this statement. At one point, he was kidding with an officer that he has apparently known for some time. In fact, he says he didn't terminate the statement because the police had come so far.

I think all in all that the statements he made to the Fox Lake Police, the County officers that testified, as well as the Round Lake officers, were done voluntarily, they were done knowingly, and I think they were done intelligently."

## I

Defendant first contends that the trial courts erred in denying his motions to suppress. In case No. 2—88—0109, defendant contends that the trial court erred in denying his motion to suppress the statements he made at the time of his arrest, and the physical evidence obtained through them, because the statements were made while defendant was in extreme pain and were the result of coercion on the part of the police who denied or delayed medical treatment for defendant's injuries. In case Nos. 2—88—0110, 0111, 0112, and 0113, defendant contends that the trial court erred in denying his motion to suppress the confessions he made to the Lake County sheriff's department and police officers from Fox Lake and Round Lake Beach while in the custody of the Roselle police department on March 12, 1987, on the basis that these confessions, like his earlier statements to the Roselle police, were the products of coercion and were made while defendant was in pain and suffering from an insufficiency of sleep and food. Defendant's contentions are without merit.

The applicable standard of review of a trial court's ruling on a defendant's motion to suppress is whether that ruling is clearly erroneous. (*People v. DeBlieck* (1989), 181 Ill. App. 3d 600, 607.) When a defendant challenges the voluntariness of his statements made to police officers, including confessions, the State bears the burden of establishing that such statements and confessions were voluntarily made. (*People v. Cleesen* (1988), 177 Ill. App. 3d 103, 110; see *People v. Brownson* (1982), 103 Ill. App. 3d 476, 478.) The State must establish the voluntary nature of the defendant's statements by a preponderance of the evidence. (*People v. Hattery* (1989), 183 Ill. App. 3d 785, 821; *Brownson*, 103 Ill. App. 3d at 479.) Voluntariness is a question for the finder of fact, whose determination will not be set aside unless it is contrary to the manifest weight of the evidence. *People v. Bae* (1988), 176 Ill. App. 3d 1065, 1074; *Brownson*, 103 Ill. App. 3d at 479.

As our supreme court has noted, "[v]oluntariness presupposes a willingness to talk uninfluenced by force, coercion, promise or intimidation of any kind." (*People v. Nemke* (1970), 46 Ill. 2d 49, 55.) Thus, the trial court's duty in considering the admissibility of a criminal defendant's statements or confessions is to determine whether such utterances were made freely, intelligently, and without compulsion or inducement of any kind, or made at a time when the defendant's will had been overcome. (*People v. Brown* (1989), 182 Ill. App. 3d 1046, 1052; see also *Cleesen*, 177 Ill. App. 3d at 110.) It is well established that the voluntary nature of a defendant's statement or con-

fession depends upon the totality of the circumstances under which such utterances were made. (*People v. Prim* (1972), 53 Ill. 2d 62, 70; *Brownson*, 103 Ill. App. 3d at 478.) Factors the trial court may consider in making this determination include the defendant's age, education and experience, intensity of the interrogation, failure to warn of constitutional rights (*Brownson*, 103 Ill. App. 3d at 478), existence of threats, promises or physical coercion, and defendant's physical condition at the time of the interrogation (*People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 1008-09; see also *People v. Hattery* (1989), 183 Ill. App. 3d 785, 821).

■ Bearing in mind the standards set forth above, our review of the record in case No. 2—88—0109 convinces us that the State sustained its burden of proof and established that defendant's statements and confessions were made voluntarily, knowingly, and intelligently, and were not the product of coercion, threats, or inducement on the part of any of the police officers in question. With regard to defendant's statements made to Roselle police officers Thomas and Kasnick, the record is devoid of any indication that either officer threatened defendant with the delay of medical treatment or actually denied medical treatment. Defendant himself admitted as much. While defendant's version of his conversations with Thomas and Kasnick differs somewhat from their testimony, we note that it is the trial court's function to assess the credibility of the witnesses, and the court is not required to accept defendant's account of the situation over contradictory testimony of the police. *Cleesen*, 177 Ill. App. 3d at 113.

The lengthy and detailed testimony of the various paramedics and emergency medical technicians who treated defendant provides overwhelming evidence that his injuries were attended to quickly and efficiently. Further, it is clear that defendant's injuries were neither extreme nor life threatening and did not cause him to lose consciousness at any time. We also note that, although the paramedics' and technicians' treatment simply consisted of assessing defendant's condition, monitoring his vital signs, and applying ice and splints, the treatment he received at the hospital comprised only the relocation of his shoulder by a physician and administration of pain relievers. Finally, we conclude, as did the trial court, that the ambulance's detour through the parking lot was a minor deviation at best and took no more than one minute. Under these circumstances, we do not believe the trial court's conclusion that defendant's statements were voluntary was against the manifest weight of the evidence.

■ Defendant nonetheless characterizes the instant case as "one where treatment to a defendant in substantial pain was delayed until

after he made a statement and led the police to other evidence." As we noted above, the evidence does not support defendant's claim of delay in his medical treatment. Additionally, that defendant was injured is simply one factor to be considered by the trial court. (*Rhodes*, 119 Ill. App. 3d at 1011.) The *Rhodes* court stated that "the mere existence of pain is not sufficient to render a statement involuntary." (119 Ill. App. 3d at 1011.) The record establishes that the trial court noted that defendant was suffering from pain associated with his injuries. However, the trial court further noted that defendant received treatment, his condition was stabilized, and he was made comfortable. Thus, the trial court's conclusion that defendant's physical discomfort did not overcome his will so as to render his statements involuntary is supported by the record on the whole and, as such, shall remain undisturbed. See *People v. Holloway* (1985), 131 Ill. App. 3d 290, 307-08.

■ With regard to defendant's confession made to Sergeant Olliges at 4:10 a.m. at the Roselle police station, we find that this issue has been waived. At the suppression hearing, defendant strenuously objected to Olliges' testimony regarding any conversations he had with defendant while at the police station on the basis that these statements went beyond the scope of his motion to suppress. These objections were sustained on defendant's representation that the motion to suppress was limited to defendant's statements made at the time of his arrest up to and including his arrival at the hospital. The record contains no further information concerning this confession, and we find that defendant has waived the issue of voluntariness of this confession. See *People v. Jimerson* (1974), 18 Ill. App. 3d 177, 179-80.

■ We next consider defendant's argument in case Nos. 2—88—0110, 0111, 0112, and 0113 regarding the confessions made to Lake County sheriff's police and representatives of the police departments of Round Lake Beach and Fox Lake. We conclude that the State established by a preponderance of the evidence that defendant's confessions were voluntarily and intelligently made. Defendant's own testimony reveals that, prior to the commencement of the interviews at 10:22 a.m. on March 12, 1987, he was taken to a cell and left alone for approximately two hours, was allowed to sleep, was offered food and drink, and was allowed to visit with his girlfriend for approximately one-half hour. We note that prior to each interview, defendant reviewed and signed a written waiver of his rights. We further note that defendant is not of tender years nor naive in his dealings with the criminal justice system, as evidenced by his prior criminal record, and he is of at least average intelligence according to the various presentence investigation reports contained in the record. (See *Rhodes*,

119 Ill. App. 3d at 1008-09; *Brownson*, 103 Ill. App. 3d at 478.) Careful review of the interview tapes convinces us that the police questioning, although lengthy, was neither intense nor threatening. Finally, there is no evidence to support defendant's claim that medical treatment was withheld, denied, or delayed in order to coerce his confessions. In view of the totality of the circumstances, the trial court correctly denied defendant's motion to suppress his confessions.

For the reasons set forth above, we conclude that the records on appeal are devoid of evidence tending to show that the trial courts' findings regarding the voluntariness of defendant's statements and confessions were manifestly contrary to the evidence.

## II

We next consider defendant's contention that the circuit court of Lake County erred in sentencing defendant when it considered as a statutory factor in aggravation that defendant received compensation in the form of proceeds as a result of committing the three armed robberies charged in that court. Defendant argues that the trial court's improper reference to compensation requires that defendant's Lake County convictions be remanded for resentencing. We disagree.

■ Section 5—5—3.2(a)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(2)) permits a sentencing court to consider as one factor in aggravation that the defendant received compensation for committing the offense. In addressing the applicability of this factor in sentencing, our supreme court has stated that "receiving compensation for committing the offense under the statute applies only to a defendant who receives remuneration, *other than proceeds from the offense itself*, to commit a crime." (Emphasis added.) (*People v. Conover* (1981), 84 Ill. 2d 400, 405.) The rule in *Conover* has been applied when remanding for resentencing convictions for armed robbery where the trial court found the defendant's receipt of proceeds from the offense to be an aggravating factor. See *People v. Teague* (1981), 101 Ill. App. 3d 993, 996; *People v. Hunt* (1981), 100 Ill. App. 3d 553, 557-58.

In the instant action, the trial court considered three factors in aggravation, namely, that (1) defendant's conduct caused or threatened serious harm; (2) defendant received the proceeds from the crimes; and (3) defendant had a prior criminal history. Clearly, the court's consideration of defendant's receipt of proceeds from the crime other than remuneration was improper.

■ However, a court's reliance on an improper factor does not always require remandment for resentencing. (*People v. Bourke*

(1983), 96 Ill. 2d 327, 332.) While remandment is necessary where the reviewing court is unable to determine the weight given to an improperly considered factor, such is not the case where it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence. (*Bourke*, 96 Ill. 2d at 332.) In *Bourke*, the court found that remandment for resentencing was not necessary notwithstanding the trial court's improper reference to compensation since the trial court and the State stressed the defendant's prior violations of probation during the sentencing hearing. (96 Ill. 2d at 333.) The court stated that it was able to determine from the record that the length of the defendant's sentence was not increased based on the trial court's reference to the defendant's receipt of proceeds from the offense. 96 Ill. 2d at 333.

■■■ The records in the instant actions similarly allow us to determine whether the trial court increased defendant's sentence based on the improperly considered factor in aggravation. In rendering sentence, the trial court found *no* mitigating factors and further stated:

> "And with respect to the factors in aggravation, clearly the Defendant's conduct caused or threatened serious harm. With respect to compensation, of course, he wasn't paid to do this. However, he did receive some of the proceeds. *Three, the Defendant has a history of prior delinquency and criminal activity. That's pretty clear. I will go into that in more detail later.* Pretty clearly the sentence here would deter others from committing the same crime.
>
> ***
>
> However, when you look through the presentence investigation of the Defendant, in addition to the crimes he was found guilty of at the stipulated bench trial, he has a burglary, a theft in excess of $150 in 1980; again a burglary in 1980, a burglary in 1980 again, and the robbery out of Antioch in 1980; and he also has the sentence in Wisconsin.
>
> *As far as his rehabilitative potential, I think it is pretty clear it is non-existent.* his [*sic*] probation was terminated unsuccessfully. We tried early in his history, Riverside Hospital. Again, that appears to have done him no good. He has served time in the Department of Corrections. That hasn't seemed to deter him or rehabilitate him. *So, I clearly find there is no likelihood of rehabilitation with respect to the Defendant.*" (Emphasis added.)

The court went on to quote from social service and psychiatric reports

that defendant was consumed by anger and hatred and possessed homicidal tendencies. The court concluded:

"Now, I have considered the nature and the circumstances of these offenses as well as the history and character of the Defendant, as I have outlined; and it is pretty clear to me that a *term of imprisonment is necessary and that it should be consecutive to protect the public from further criminal conduct of the Defendant. I think what he has done here can only be characterized as a reign of terror in our county.*

So, I am going to sentence the Defendant to 30 years ***."
(Emphasis added.)

Clearly, the court was focused on defendant's prior history and rehabilitative potential, and not on the fact that defendant obtained proceeds from the armed robberies. In fact, the court never again mentioned the improper factor before rendering sentence. Accordingly, we conclude that defendant's Lake County convictions do not require remandment for a new sentencing hearing.

In view of our conclusion that the trial courts did not err in denying defendant's motions to suppress, we do not reach the third issue presented.

Accordingly, the judgments are affirmed.

Affirmed.

UNVERZAGT, P.J., and NASH, J., concur.