THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAVERT JONES, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2346

Opinion filed September 16, 1992.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Noreen M. Daly, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant Lavert Jones was found guilty of attempted armed robbery, conspiracy to commit armed robbery and the murder of St. Clair Haywood, and was sentenced to concurrent terms of 10 years, 3 years and 40 years, respectively.

Defendant contends on appeal that (1) there was no probable cause for his arrest; (2) the trial court should have granted his motion to suppress statements to police since the State failed to produce one of the police officers he alleges took part in coercing his statement; (3) prior consistent statements of a crucial prosecution witness were improperly admitted; (4) testimony regarding incriminating statements by the nontestifying codefendants was admitted; (5) defendant's conviction and sentence for conspiracy to commit armed robbery should be vacated since they are based on the same act or acts as defendant's conviction and sentence for attempted armed robbery; and (6) the trial court abused its discretion in sentencing defendant to the maximum nonextended term of 40 years for the offense of murder.

In a *pro se* supplemental brief, defendant also contends that: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court failed to properly instruct the jury as to self-defense and voluntary manslaughter; (3) defense counsel was ineffective in failing to tender an instruction on self-defense or voluntary manslaughter; (4) it was error when the State failed to produce the murder weapon; and (5) he was denied a fair trial by improper comments made by the prosecution in closing argument.

We affirm defendant's conviction and sentence on the issues presented, but remand to reopen the suppression hearing so that a material witness may testify.

At approximately 6 a.m. on December 20, 1983, St. Clair Haywood was found slumped over the steering wheel of his car across the street from his home, a victim of multiple gunshot wounds.

A neighbor of the victim, Venus Harris, testified that she heard gunfire and looked out her window to see two cars on the street. Ms. Harris stated that a young black male in his early twenties walked

from the victim's car to an older, two-door gray Chevrolet, while the victim's car slowly moved forward to rest against a tree.

While police investigated the murder, James Young was arrested several weeks later for unlawful possession of a .25 caliber handgun, and tests performed on the weapon revealed that it had fired the bullets recovered in the Haywood shooting.

When police questioned Young, he told them he had purchased the gun from defendant in the week between Christmas and New Year's Day, paying $25 for it. The officers then informed Young that the gun had been used to commit a homicide, and when asked if he had any information about it, he acknowledged that he did.

Young testified at trial that he had known defendant for at least 11 years, they had socialized together but were not close friends. On December 19, 1983, at approximately 10 a.m., Young was at a local game room when defendant and Craft engaged him in conversation and defendant told Young that he needed a gun so they could "stick-up some guy around fifty-something and State" Streets to "make some money." When defendant asked Young if he knew where defendant might obtain a gun, Young replied that he did not know and did not wish to be involved in a holdup.

At approximately 7 p.m. that evening, Young again saw defendant and Craft at the game room and defendant again stated that they were going to "fifty-something and State to make some money" and Young again declined to accompany them. Later that evening, at approximately 10 p.m., Young and Mark Nunley saw defendant and Craft on the corner of 93rd and Marshfield Streets, and defendant confirmed to Young that he was "on his way" as he climbed into his gray Chevrolet with a black top.

The next morning, at approximately 6:30 a.m., Young encountered defendant and Craft getting out of defendant's car in front of defendant's house. Defendant then told Young that he, Craft and Alex Moore followed the victim home, that defendant shot the man, but that the other two were too frightened to get out of the car, so defendant got back into the car and they drove back to defendant's house.

Young stated that he was not aware that the gun he purchased from defendant was the gun used in the December 20 incident and that he was not aware of the victim's death.

Based upon the information received from Young, which correlated with the Harris statement, police arrested defendant at his grandparents' house, where he lived much of the time.

Shortly after defendant arrived at the police station at about 2 a.m., Detectives Peter Dignan and John Yucaitis talked with defendant.

Detective Dignan testified that defendant was handcuffed to the wall of an interview room, read his rights and told of the charges against him. When defendant denied his involvement, the detectives informed him of what Young had told them and defendant immediately stated "Man, you know it. I will tell you."

Dignan testified that defendant then told him that Craft approached him before Christmas in 1983 and told him of a drug dealer who was "an easy knock," but that he needed a gun. Defendant told Craft that Alex Moore, the third codefendant, had one.

Dignan stated that defendant told him that on the evening of December 19, 1983, the three defendants went to 59th Street and Indiana Avenue and followed the victim out of the lounge to a downtown hotel where he stayed for quite a while. After the victim exited the hotel, they followed him to his home and pulled up near where he had parked at the curb.

The defendant told Dignan that when he walked up to the victim's car and asked him if he had any drugs, defendant said it looked as if Haywood was reaching for a gun. Defendant started shooting, but could not recall how many shots he fired. Defendant then ran to the car and they left the area. Defendant admitted he sold the gun to James Young one week later.

On cross-examination, Dignan testified that Young indicated that the hold-up was Craft's idea and that Young was never asked to sign a statement. Dignan's police report indicated that prior to his initial interview with defendant, Detective Kushner spoke with defendant and defendant denied any knowledge of or involvement in Haywood's murder. Prior to making a court-reported statement to Assistant State's Attorney John Lerner, Dignan arranged for defendant to telephone his mother. Dignan denied that either he or Detective Yucaitis ever struck defendant at any time.

Assistant State's Attorney John Lerner testified that he was at the police station at 9 a.m. on January 28, 1984, and spoke with James Young and the three defendants. At approximately 11 a.m., Lerner attempted to begin a court-reported statement of defendant's which he had agreed to give, but defendant then stated that he wanted additional time to think about it and asked him to come back later. After defendant made a phone call to his mother and Lerner had again advised him of his rights, he gave a court-reported state-

ment at approximately 1:15 p.m. with Lerner, Dignan and the court reporter present.

Lerner testified that the statement was substantially the same as that related to Detective Dignan, but with some additional information: that defendant met Craft through Young; and that Craft told him that he knew of an old man who sold drugs and carried a lot of money; and that Craft drove defendant's car that night.

The statement revealed that when defendant approached the victim's car, the victim rolled down his window and defendant asked if he had any dope. Defendant stated that the victim looked surprised and said yes at first but then asked defendant's identity. Defendant then stated that when the victim reached for a pistol on the seat next to him, defendant "got hysterical" and started firing at the victim. While defendant could not recall exactly how many times he fired the gun, he did recall that it was more than once. Defendant then ran to his car, jumped in and Craft drove away. Defendant admitted that he later sold the gun to Young.

Lerner further testified that after defendant gave the statement, defendant reviewed, edited and signed it, and a photograph of him was taken. Defendant also acknowledged in his statement that he had made a phone call, been fed, given cigarettes and was not mistreated at the station. Defendant never told Lerner that he had been hit by anyone while he was at the station, he never asked for any medical treatment, nor did Lerner observe any injuries to defendant when he spoke with him.

Defendant testified that he did not shoot or kill anyone; that he did not know Craft; that he had not seen Young in over a year; and that the pictures taken of him at the time of his statement and when he arrived at the county jail showed injuries he sustained.

Defendant stated that between the time of his arrest and the court-reported statement, he was beaten and kicked by three detectives whose names he could not recall. He estimated that he was hit in the head approximately 1,000 times and stated that he vomited from the beatings. Defendant testified that when he asked to call his mother and a lawyer, the detectives left the room, returned a short while later and beat defendant until he passed out.

While defendant acknowledged that he was asked some questions that night, he could not remember answering any of them or remember whether an assistant State's Attorney was in the room. He also admitted that he signed every page of the statement, but denied giving any of the information in it. Defendant stated that he never requested medical treatment at any time nor did he tell anyone he was

beaten. While defendant also denied he was advised of his constitutional rights, his court-reported statement contained his acknowledgement of having been so advised.

Upon rebuttal, Detective Yucaitis stated that he never beat defendant, that he never saw defendant being beaten, and that he never saw defendant vomit or show any signs of injuries. Detective Yucaitis also testified that defendant told him that he was unemployed, contrary to defendant's testimony that he was employed by Christ Hospital.

The State also called Almaz Ayodele, who was the medical technician at the Cook County Department of Corrections when defendant was first transported to the jail after leaving the police station. She examined defendant from the waist up and found no cuts, bruises, swelling or other marks of recent physical abuse. She stated that it was the duty of the "G.C." room to first examine defendant's lower body, and to note on defendant's chart if any bruises, scars or other marks are evident. Ms. Ayodele stated that no such notations were on defendant's chart when she received it.

Further, in the course of her examination, she asked defendant many questions regarding his health, including whether or not he had sustained any head or chest injuries, to which defendant replied he had not. Ms. Ayodele testified that the only problems of which defendant complained were sinus and asthma irritations for which he was taking medication.

Defense counsel first argues that the trial court erred in denying defendant's motion to quash arrest and suppress evidence because the police did not have probable cause to arrest him. Defendant contends that the information Young provided police was not reliable because Young was a suspect in the murder.

■ However, before the police spoke to Young, they were aware that the victim was an older man, known to traffic in drugs, who died of gunshot wounds in the early morning hours. They also had information from Ms. Harris that placed at the scene a gray, two-door Chevrolet with three occupants, at least one of whom was a young African-American male, in his early twenties and matching defendant's description, who entered the car after gunshots were fired.

Young provided police information to corroborate their evidence: defendant told Young that he intended to rob an old dope dealer who carried large sums of money; defendant also told Young on the morning of the murder that he and two others were involved in the shooting; Young described defendant's car as a two-door Chevrolet with gray primer and a black top.

We find that the totality of the circumstances supports a finding of probable cause to arrest defendant.

To determine probable cause in cases involving an informant's information, Illinois adopted the totality-of-the-circumstances test of *Illinois v. Gates* (1983), 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44, 103 S. Ct. 2317, 2328. (*People v. Tisler* (1984), 103 Ill. 2d 226, 245-46, 469 N.E.2d 147.) The test is whether by application of factual and practical commonsense considerations, a reasonable and prudent person would believe that the person arrested has committed the offense. *People v. Adams* (1989), 131 Ill. 2d 387, 396-97, 546 N.E.2d 561; *People v. Smith* (1991), 222 Ill. App. 3d 473, 478, 584 N.E.2d 211.

An informant's "veracity" or "reliability" and his "basis of knowledge" are examined and a deficiency in one may be compensated for, in determining the overall reliability of a statement, by a strong showing as to the other, or by some indicia of reliability. *Gates*, 462 U.S. at 233, 76 L. Ed. 2d at 545, 103 S. Ct. at 2329.

Therefore, we affirm the trial court's holding that the police had probable cause since we find Young's basis of knowledge, that is, his detailed conversations with defendant, credible and his reliability sufficiently established by independent corroboration with information that the police already knew prior to talking with him. For purposes of review, we consider the information available to police prior to arrest. *Adams*, 131 Ill. 2d at 398; *People v. Miller* (1991), 212 Ill. App. 3d 195, 201, 570 N.E.2d 1202.

Defendant next argues that the court erred in denying defendant's motion to suppress his statements since the State failed to produce without explanation one of the police officers defendant alleged beat him.

Defendant contends that the incriminating oral and written statements that he made at the police station should be suppressed because he was beaten into making them by Sergeant Byrne and Detectives Dignan and Yucaitis. Although Dignan and Yucaitis testified, defendant claims Sergeant Byrne is a material witness who did not testify at the pretrial hearing, thus violating the material witness rule.

Defendant testified at the pretrial hearing that although he could not remember the names of the three detectives who beat him, he could remember their faces. Defense counsel supplied the names "Dignan," "Yucaitis" and "Byrne" to defendant and he confirmed that they were the detectives who coerced him into making his statements by beating him.

Time and again on direct and cross, defendant confirmed that "three" policemen took part in the beatings that led to his statements. On cross-examination, the State failed to question defendant as to Byrne's appearance or any other matters that would touch upon Byrne's identity.

Detective Dignan testified that he and his partner, Detective Yucaitis, informed Sergeant Byrne, their superior, of the content of their initial interview with defendant. Sergeant Byrne accompanied the two detectives and defendant in the squad car to arrest codefendant Craft. However, defense counsel never cross-examined Dignan regarding Sergeant Byrne's role in the investigation or even inquired whether the sergeant had ever entered the interview room at any time.

Detective Yucaitis testified in rebuttal that neither he nor Detective Dignan ever beat the defendant and that Sergeant Byrne was not present for any interview with defendant.

■ The purpose of the material witness rule is to compel the State to produce those officers who were witnesses to or who had a role in procuring the controverted statement. *People v. Terrell* (1989), 132 Ill. 2d 178, 202, 547 N.E.2d 145; *People v. Ralon* (1991), 211 Ill. App. 3d 927, 944, 570 N.E.2d 742; *People v. Jones* (1990), 196 Ill. App. 3d 937, 958, 554 N.E.2d 516.

Where a police officer is alleged to have beaten a defendant prior to the defendant's confession, the officer's testimony is material to the issue of the voluntariness of the confession, regardless of whether the officer was actually present at the time the confession was made. *People v. Armstrong* (1972), 51 Ill. 2d 471, 476, 282 N.E.2d 712; *Ralon*, 211 Ill. App. 3d at 944-45; *People v. Lumpp* (1983), 113 Ill. App. 3d 694, 699, 447 N.E.2d 963; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 279, 393 N.E.2d 1098; *People v. Delk* (1976), 36 Ill. App. 3d 1027, 1035, 345 N.E.2d 197.

■ In the present case, defendant's testimony at the suppression hearing that Sergeant Byrne beat him made Sergeant Byrne a material witness. While the State argues that defense counsel's questions for the defendant as to the officers' identities were leading, the State failed to object to such questions. Although Detective Dignan testified that Sergeant Byrne was never present while defendant was being questioned, we find that testimony incomplete in describing Byrne's involvement in the case as the supervisor on duty at the time of the alleged beatings.

The material witness rule is intended as a safeguard against improperly induced confessions. (*Ralon*, 211 Ill. App. 3d at 944.) While

the trial judge found defendant's charges of coercion so "preposterous as to be an insult," such charges of coerced statements and brutality threaten the integrity of our judicial system, and we believe that a trial court, in admitting evidence as to such charges, should be overinclusive and not underinclusive.

Since we find the State failed to carry its burden to call all material witnesses, we remand to reopen the suppression hearing so that Sergeant Byrne may testify. Since defendant failed to raise any issue as to other possible material witnesses who should have testified, the reopened hearing is limited to Sergeant Byrne's testimony. The testimony of the other witnesses has been heard and weighed by the trial court and unless Sergeant Byrne's testimony overcomes the prior finding of voluntariness, that finding shall stand and no new trial shall be granted defendant. *Ralon*, 211 Ill. App. 3d at 949; see *People v. Carr* (1987), 168 Ill. App. 3d 669, 672, 523 N.E.2d 393; *People v. Feagans* (1985), 134 Ill. App. 3d 252, 256-57, 480 N.E.2d 153.

Defendant next argues that Young's prior consistent statements contained in the testimony of Young and Detective Ryan were improperly admitted and were used only to bolster Young's credibility.

■ Defendant admits that his trial counsel failed to properly preserve the issue by objecting at trial and raising it in the post-trial motion. We agree and find this issue waived, having determined there is no plain error since the record does not clearly reflect an error affecting defendant's substantive rights. *People v. Palmer* (1989), 188 Ill. App. 3d 414, 422, 545 N.E.2d 743.

However, it is clear from the record that these statements to police simply demonstrated how Young was integral to the investigation and that the investigation was thorough, contrary to defendant's contentions. Further, the statements which defendant disputes lack the details of Young's earlier testimony and, even if the statements had been found improper, they would not have prejudiced defendant's right to a fair trial. We find no error in the admission of this testimony.

Defendant next argues that the trial court erroneously admitted incriminating hearsay testimony of his codefendants which violated the hearsay rule and defendant's right to cross-examine and confront witnesses.

On redirect, the prosecution asked Assistant State's Attorney John Lerner, who took defendant's court-reported statement, how he knew that defendant had taken a specific route in following the victim to his house. Mr. Lerner stated that he had already talked to defend-

ant about it in his first oral statement and "had also talked to Moore and Craft," codefendants in the case.

Defendant here charges a *Bruton* violation, where admission into evidence of a nontestifying codefendant's statement violates a defendant's rights to confront and cross-examine the witnesses against him when the statement inculpates the defendant. *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

Where the substance of a conversation with a nontestifying third party is not revealed, a police officer may properly testify concerning investigatory procedures, even though the jury could reasonably infer that the accomplice implicated the defendant. *People v. Morgan* (1991), 142 Ill. 2d 410, 446-47, 568 N.E.2d 755. *People v. Gacho* (1988), 122 Ill. 2d 221, 248, 522 N.E.2d 1146; *People v. Moman* (1990), 201 Ill. App. 3d 293, 303, 558 N.E.2d 1231.

■ Here, we need not make that determination. The assistant State's Attorney acted in conjunction with police to take defendant's statement and to investigate the details of defendant's confession. However, we find no *Bruton* violation since the record demonstrates that the assistant State's Attorney's testimony was intended to rebut defendant's inference during cross-examination that the assistant State's Attorney had supplied defendant with the information as to the route taken in following the victim. Therefore, the testimony was not offered for the truth of the matter asserted, but rather, to rebut defendant's inference of a manufactured confession.

Defendant next contends that his conviction and sentence for conspiracy to commit armed robbery should be vacated since they are based upon the same act or acts as defendant's conviction and sentence for attempted armed robbery.

Although the record indicates that defendant has waived this issue by failing to raise it in the trial court or in his post-trial motion, we consider it under the plain error doctrine.

■ An accused cannot be convicted and sentenced for multiple crimes based upon the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Boulrece* (1990), 195 Ill. App. 3d 666, 552 N.E.2d 1166.) While a defendant may not be convicted of both a principal and inchoate offense, there is no bar against multiple convictions for the inchoate offenses of attempted armed robbery and conspiracy to commit armed robbery.

We find here that the acts in furtherance of the conspiracy to commit armed robbery and the substantial step towards the commission of armed robbery were separate and distinct and thus proper.

Defendant conspired with codefendants Craft and Moore to rob St. Clair Haywood. The three obtained a gun prior to Haywood's death, solicited Young to participate, waited outside the lounge the victim frequented until he exited, followed him to a hotel and waited again for him to emerge. After several hours of stalking the victim, they followed him to his home. All of these activities constitute a conspiracy to commit armed robbery.

The substantial step toward armed robbery occurred as defendant stepped from his car with a loaded gun, approached Haywood and feigned an interest in obtaining drugs so as to create an opportunity to rob him. The jury could have reasonably inferred that if defendant was only interested in buying drugs, a loaded pistol was not necessary.

A similar case is *People v. Del Percio* (1985), 105 Ill. 2d 372, 475 N.E.2d 528, where the court upheld defendant's conviction for conspiracy to commit armed robbery and attempted armed robbery, finding that each offense had a different factual basis. The acts in furtherance of the conspiracy to rob a jewelry salesman were procuring a shotgun and tape and knocking on the door of the victim's apartment. The substantial step toward attempted armed robbery was "the threat of the imminent use of force and pointing the shotgun" at the victim. *Del Percio*, 105 Ill. 2d at 384.

Defendant next argues that the trial court abused its discretion in sentencing defendant for the offense of murder to 40 years.

Defendant contends that the trial court failed to properly consider several factors in mitigation: (1) provocation where it appeared Haywood was drawing a gun; (2) defendant's panic, which, although not a defense, might be a justification for his criminal conduct; and (3) the idea that his conduct was induced or facilitated by Thomas Craft, who approached him with the scheme.

■ At the time of the offense, the sentence for murder was a determinate period of not less than 20 years and not more than 40 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2).) Further, defendant was eligible for an extended term of not more than 80 years since Haywood was 75 years old at the time of the shooting. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—3—3.2(b)(3).) Defendant's contention that he received the maximum number of years under the nonextended statute is uncertain since the record fails to demonstrate that the trial judge declined to apply the nonextended statute.

There is a rebuttable presumption that a sentence is proper and the presumption can be overcome only by an affirmative showing that the sentence is at substantial variance from the purposes and spirit of the law, or is manifestly violative of constitutional guidelines. (*People v.*

*Fletcher* (1987), 156 Ill. App. 3d 405, 509 N.E.2d 625.) It is presumed that the trial judge has a superior opportunity to consider the particular circumstances and defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Escobar* (1988), 168 Ill. App. 3d 30, 522 N.E.2d 191.

Defendant's argument that he was provoked into shooting Haywood, or that he panicked or that his conduct was facilitated by Craft, is inapposite to his trial defense that he was not involved in the crime and that his confession was coerced. Defendant cannot now rely on his allegedly coerced confession in which he stated that he acted in self-defense.

The trial judge discussed in detail the aggravating and mitigating factors. The court found aggravating the perjurious nature of defendant's trial testimony regarding the police beatings and the need for deterrence of such crimes; the age of the victim; and the fact that defendant had coldly stalked an "easy mark," following his victim for hours with a loaded pistol, planning to rob him and approaching him when the victim was finally alone.

The court found mitigating the fact that defendant was 19 years old with no previous criminal record, but did not believe, based upon his observations of defendant's character and attitude, that defendant was unlikely to commit such a crime again.

We find that the trial court's sentence for murder is not improperly at variance with the purposes and spirit of the law or violative of constitutional guidelines. The trial court reasonably weighed the aggravating and mitigating factors, and because the extended-term sentence could apply in this case, we affirm defendant's sentence for the offense of murder.

We now address the issues raised in defendant's *pro se* supplemental brief.

Defendant first argues that he was not proved guilty beyond a reasonable doubt of either murder, attempted armed robbery or conspiracy to commit armed robbery.

■ A jury's verdict will not be disturbed on review unless the evidence is so contrary to the verdict or so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) The trier of fact is in the unique position to observe the demeanor of the witnesses, assess their credibility and examine a witness' testimony for any motivational factor which would bear on its truthfulness, and a reviewing court, viewing the evidence in a light most favorable to the prosecution, should not substitute its judgment for that of the trial court unless its determination is so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. *Young*, 128

Ill. 2d at 48-49; *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402.

Upon a review of the evidence, we find that the jury could easily have found the defendant guilty beyond a reasonable doubt.

We also reject defendant's next contention that it was error when the trial court failed to instruct the jury on self-defense or voluntary manslaughter.

The parties are usually responsible for preparing jury instructions, and a party generally may not raise on appeal a failure to give an instruction unless he tendered it. (*People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141.) When neither constitutional rights nor plain error is involved, a defendant must either object at the instruction conference to the instructions given, or tender those instructions which he desires, or he cannot claim error on appeal. *Young*, 128 Ill. 2d at 57-58.

■ We find no constitutional rights here in question nor is there cause for examination under the plain error rule. Defendant failed to preserve this issue for review since the affirmative defense of self-defense was never advanced nor such an instruction requested nor was any instruction for voluntary manslaughter requested.

Also, the record demonstrates that defendant's desired instructions were neither legally nor factually consistent with his defense theory. Because defendant was convicted under the felony murder doctrine, the jury was not required to find defendant intended to kill Haywood; therefore, self-defense cannot be an affirmative defense to this charge. (*People v. Moore* (1983), 95 Ill. 2d 404, 411, 447 N.E.2d 1327.) The jury was properly instructed as to all elements of the crimes charged and the State's burden of proof as to each, and the evidence is not so closely balanced that the lack of the desired instruction would, in any event, have deprived defendant of a fair trial.

Defendant next argues that he received ineffective assistance of counsel when his trial attorney failed to argue self-defense and failed to tender instructions on either self-defense or voluntary manslaughter.

We find that defendant's contention fails to meet the two-pronged test of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, as adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, requiring a defendant to establish (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.

A reviewing court evaluates the reasonableness of trial counsel's actions from trial counsel's perspective at the time of the alleged errors,

not in hindsight, in light of the totality of the circumstances. *People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.

A reviewing court will not examine an attorney's trial conduct where it involves the exercise of judgment, discretion, trial tactics or strategy. *People v. Peterson* (1989), 182 Ill. App. 3d 756, 761, 538 N.E.2d 685.

■■■ In the present case, counsel's decision was a matter of trial strategy. Had defendant's counsel requested those jury instructions, defendant's credibility would have been greatly damaged since the theory of self-defense is inconsistent with the theory put forth at trial that defendant was not involved in the shooting and his confession was coerced.

Counsel's choice of trial strategy is virtually unchallengeable if such choice was made after a thorough investigation of the law and facts relevant to plausible options. (*Strickland*, 668 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) The record here establishes that defense counsel thoroughly investigated and prepared defendant's case and reasonably chose to argue defendant's complete innocence in the shooting, rather than a justification for it.

■■■ Defendant also argues that it was reversible error when the State failed to produce at trial the gun used in the murder. Because defendant failed to raise this issue in the trial court or in a post-trial motion, and because we find the evidence is not closely balanced and that defendant received a fair and impartial trial (*Young*, 128 Ill. 2d at 47), we find this issue waived.

Finally, defendant argues that portions of the State's closing argument were improper and denied him a fair trial. However, defendant failed to raise this issue either at trial or in his post-trial motion (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124), and the waiver rule is applicable even in cases where prosecutorial misconduct in closing argument is alleged. *People v. Franklin* (1990), 135 Ill. 2d 78, 100, 552 N.E.2d 743.

For all of the foregoing reasons, we affirm in part and remand for a reopened suppression hearing wherein only Sergeant Byrne shall testify.

Affirmed in part; remanded in part.

TULLY and CERDA, JJ., concur.